No. 25-826

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

PAUL HUTCHINS, as a representative of a class of participants
and beneficiaries on behalf of the HP Inc. 401(k) Plan,

*Plaintiff-Appellant,*

v.

HP INC.,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of California
No. 5:23-cv-05875-BLF
Hon. Beth Labson Freeman

---

### APPELLANT'S OPENING BRIEF

---

Matthew B. Hayes (SBN 220639)
mhayes@helpcounsel.com
Kye D. Pawlenko (SBN 221475)
kpawlenko@helpcounsel.com
HAYES PAWLENKO LLP
1414 Fair Oaks Avenue, Ste. 2B
South Pasadena, CA 91030
Tel.: 626.808.4357
*Attorneys for Appellant*
*Paul Hutchins*

# TABLE OF CONTENTS

**Page**

INTRODUCTION..................................................................1

JURISDICTIONAL STATEMENT.................................3

ISSUES PRESENTED.................................................3

STATEMENT OF FACTS.............................................4

STATEMENT OF THE CASE.......................................9

SUMMARY OF ARGUMENT........................................11

ARGUMENT...............................................................14

I. Plaintiff's Breach of Fiduciary Duty Claims are Plausible..................14

   A. HP Acted as a Fiduciary When Reallocating Forfeitures..............15

   B. HP Breached its Fiduciary Duties....................................18

     1.  HP Failed to Act Solely in the Interest of Participants..........19

     2.  HP Failed to Act Prudently..................................24

II. The District Court Erred in Dismissing Plaintiff's Breach of
  Fiduciary Duty Claims ...........................................27

   A. The District Court Applied the Wrong Legal Standard.............27

   B. The District Court Misread *Wright*..................................31

   C. The District Court Misconstrued the Plan Document..............33

   D. The District Court Misapplied Tax Guidance.........................35

III. The District Court Erred in Dismissing Plaintiff's Self-Dealing
    Claim………………………………………………………...…38

    A. Section 1106(b)(1) is not Limited to Transactional Dealing………..39

    B. HP Used the Plan's Assets in a Transactional Deal………………46

CONCLUSION………………………………………………………49

STATEMENT OF RELATED CASES………………………………50

CERTIFICATE OF COMPLIANCE………………………………51

# TABLE OF AUTHORITIES

**Cases**                                                                                                **Page(s)**

*Acosta v. Pac. Enters.*,
    950 F.2d 611 (9th Cir. 1991)……………………………………………18, 46

*Bafford v. Northrop Grumman Corp.*,
    994 F.3d 1020 (9th Cir. 2021)……………………………………………14

*Barker v. Am. Mobil Power Corp.*,
    64 F.3d 1397 (9th Cir. 1995)………………………...1-2, 18, 29-30, 36

*BedRoc Ltd., LLC v. United States*,
    541 U.S. 176 (2004)………………………………………………………39

*Bin v. Exxon Co. U.S.A.*,
    220 F.3d 1042 (9th Cir. 2000) (en banc)……………………………..19

*Bos v. Bd. of Trs.*,
    795 F.3d 1006 (9th Cir. 2015)……………………………………………16

*Bugielski v. AT&T Servs., Inc.*,
    76 F.4th 894 (9th Cir. 2023)………………………………….....44, 45, 46

*Burke v. Pitney Bowes, Inc. Long-Term Disability Plan*,
    544 F.3d 1016 (9th Cir. 2008)……………………………………………21

*Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transport, Inc.*,
    472 U.S. 559 (1985)………………………………………………47-48

*City & Cnty. of San Francisco v. EPA*,
    145 S. Ct. 704 (2025)……………………………………………………42

*Cline v. Indus. Maint. Eng'g & Cont. Co.*,
    200 F.3d 1223 (9th Cir. 2000)……………………………………………16

*Collins v. Pension & Ins. Comm. of S. Cal. Rock Prod. & Ready Mixed Concrete Assocs.*,
  144 F.3d 1279 (9th Cir. 1998)................................................33

*Cunha v. Ward Foods, Inc.*,
  804 F.2d 1418 (9th Cir. 1986)................................................20

*Disability Rts. Mont., Inc. v. Batista*,
  930 F.3d 1090 (9th Cir. 2019)................................................29

*Doe v. Grindr Inc.*,
  128 F.4th 1148 (9th Cir. 2025)...............................................14

*Estate of Finnigan v. United States*,
  2 F.4th 793 (9th Cir. 2021)..................................................43

*Fifth Third Bancorp. v. Dudenhoeffer*,
  573 U.S. 409 (2014)....................................18, 28, 32-33, 37, 38

*Foltz v. U.S. News & World Report, Inc.*,
  865 F.2d 364 (D.C. Cir. 1989)................................................33

*Friend v. Sanwa Bank Cal.*,
  35 F.3d 466 (9th Cir. 1994)..............................................40, 46

*Guyan Int'l, Inc. v. Prof'l Benefits Adm'rs, Inc.*,
  689 F.3d 793 (6th Cir. 2012).................................................41

*Howard v. Shay*,
  100 F.3d 1484 (9th Cir. 1996)..........................................18-19, 24

*Hughes Aircraft Co. v. Jacobson*,
  525 U.S. 432 (1999)...................................................17, 30-31

*Hunley v. Instagram, LLC*,
  73 F.4th 1060 (9th Cir. 2023)................................................36

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
    589 U.S. 178 (2020)................................................................43

*IT Corp. v. Gen. Am. Life Ins. Co.*,
    107 F.3d 1415 (9th Cir. 1997)...............................................15

*Johnson v. City of Shelby*,
    574 U.S. 10 (2014)................................................................27

*Johnson v. Couturier*,
    572 F.3d 1067 (9th Cir. 2009)...............................................18

*Leigh v. Engle*,
    727 F.2d 113 (7th Cir. 1984).......................18, 20, 22, 24-25, 26

*Lockheed Corp. v. Spink*,
    517 U.S. 882 (1996)..................................................30, 44-45

*Mass. Laborers' Health & Welfare Fund v. Blue Cross Blue Shield of Mass.*,
    66 F.4th 307 (1st Cir. 2023).................................................16

*McMaken v. GreatBanc Tr. Co.*,
    2019 WL 1468157 (N.D. Ill. Apr. 3, 2019)..............................40

*McManus v. Clorox Co.*,
    2025 WL 732087 (N.D. Cal. Mar. 3, 2025)............23, 26, 30, 34-35

*Mi Familia Vota v. Fontes*,
    129 F.4th 691 (9th Cir. 2025)...............................................39

*Milgram v. Orthopedic Assocs. Defined Contribution Pension Plan*,
    666 F.3d 68 (2d Cir. 2011)...................................................41

*Nat'l Sec. Sys., Inc. v. Iola*,
    700 F.3d 65 (3d Cir. 2012)...................................................41

*Naylor v. BAE Sys., Inc.*,
    2024 WL 4112322 (E.D. Va. Sept. 5, 2024)...............................6

*Patelco Credit Union v. Sahni*,
    262 F.3d 897 (9th Cir. 2001)..................................................41

*Pegram v. Herdrich*,
    530 U.S. 211 (2000)..........................................1, 19, 29, 35, 36

*Peralta v. Hispanic Bus., Inc.*,
    419 F.3d 1064 (9th Cir. 2005).................................................19

*Perez-Cruet v. Qualcomm Inc.*,
    2024 WL 2702207 (S.D. Cal. May 24, 2024)........................23, 27

*Pilkington PLC v. Perelman*,
    72 F.3d 1396 (9th Cir. 1995)...................................18, 19, 20, 23

*Rimini St., Inc. v. Oracle USA, Inc.*,
    586 U.S. 334 (2019)...............................................................43

*Rodriguez v. Intuit Inc.*,
    744 F. Supp. 3d 935 (N.D. Cal. 2024)............................23, 26-27

*Russello v. United States*,
    464 U.S. 16 (1983)................................................................42

*Ryan S. v. UnitedHealth Grp., Inc.*,
    98 F.4th 965 (9th Cir. 2024)..............................................27-28

*Sacerdote v. New York Univ.*,
    9 F.4th 95 (2d Cir. 2021)........................................................24

*Salas v. United States*,
    116 F.4th 830 (9th Cir. 2024)....................................14, 43, 47

*Santomenno v. Transam. Life Ins. Co.*,
    883 F.3d 833 (9th Cir. 2018).................................................15

*Sprague v. Cent. States, Se. & Sw. Areas Pension Fund,*
    269 F.3d 811 (7th Cir. 2001)................................................48, 49

*Summers v. State St. Bank & Tr. Co.,*
    453 F.3d 404 (7th Cir. 2006)..................................................38

*Tedori v. United States,*
    211 F.3d 488 (9th Cir. 2000)..................................................36

*Thole v. U.S. Bank N.A.,*
    590 U.S. 538 (2020)..................................................31

*Tibble v. Edison Int'l,*
    843 F.3d 1187 (9th Cir. 2016)..................................................24

*Trs. of S. Cal. Bakery Drivers Sec. Fund v. Middleton,*
    474 F.3d 642 (9th Cir. 2007)..................................................17

*Waller v. Blue Cross of Cal.,*
    32 F.3d 1337 (9th Cir. 1994)..................................................16

*Walsh v. Allen,*
    2022 WL 256312 (W.D. Ky. Jan. 26, 2022)................................6

*Watanabe v. Derr,*
    115 F.4th 1034 (9th Cir. 2024)..................................................27

*Whitaker v. Tesla Motors, Inc.,*
    985 F.3d 1173 (9th Cir. 2021)..................................................27

*Wright v. Oregon Metallurgical Corp.,*
    360 F.3d 1090 (9th Cir. 2004)..................................31-32, 45-46

**Statutes**

28 U.S.C. § 1291.................................................................3

28 U.S.C. § 1331.................................................................3

29 U.S.C. § 1002..........................................................15, 16

29 U.S.C. § 1103...............................................................16

29 U.S.C. § 1104.........................................................18, 33

29 U.S.C. § 1106........................................38, 39-40, 42, 43, 45, 47

## INTRODUCTION

This case concerns the reallocation of assets in a 401(k) plan after they are forfeited. "Forfeitures" arise when plan participants separate from service before fully vesting in the contributions allocated to their individual accounts. When that occurs, participants forfeit their right to the unvested contributions and these plan assets must be reallocated toward another use. The question here is whether the fiduciary entrusted with reallocating forfeitures must endeavor to choose the use that best serves the remaining participants' interests or instead may choose the use that best serves its own self-interest.

The answer is obvious. When a plan document entrusts the fiduciary administering the plan with discretion to choose from a menu of permissible options, the fiduciary duties at the core of the Employee Retirement Income Security Act ("ERISA") require the fiduciary to put aside its own self-interest and try to choose the option that is in the participants' best interests. *Pegram v. Herdrich*, 530 U.S. 211, 235 (2000) ("[T]he fiduciary standard" requires "'an eye single' toward beneficiaries' interests") (citation omitted); *Barker v. Am. Mobil Power*

*Corp.*, 64 F.3d 1397, 1403 (9th Cir. 1995) ("A fiduciary has a duty to act in the best interests of the plan participants and beneficiaries.").

Here, the plan document entrusts HP with discretion to choose between using forfeitures to (i) defray the plan's expenses charged to participants' accounts, or (ii) offset the contributions HP must make to the plan. Plaintiff alleges that HP breached its fiduciary duties and engaged in prohibited self-dealing when, year after year, it chose to use all forfeitures to offset its own contributions.

The district court disagreed and dismissed Plaintiff's claims. The district court found Plaintiff's breach of fiduciary duty allegations implausible because "in every plausible instance" HP "would always be required to choose" to use forfeitures "to pay administrative costs." (1-ER-11.) The district court dismissed Plaintiff's self-dealing claim because the court believed that ERISA's self-dealing prohibition does not bar "non-transactional 'dealing' with account assets." (1-ER-18.)

As established below, Plaintiff has alleged plausible claims for breach of fiduciary duties and self-dealing. Accordingly, the district court's order dismissing those claims should be reversed and this case should be remanded for further proceedings.

## JURISDICTIONAL STATEMENT

This is an appeal from the district court's February 5, 2025 judgment in favor of HP and against Plaintiff. (1-ER-2.) The district court had jurisdiction pursuant to 28 U.S.C. § 1331. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. Plaintiff timely appealed on February 6, 2025. (2-ER-315.)

## ISSUES PRESENTED

1.  Whether the district court erred in dismissing Plaintiff's breach of fiduciary duty claims where, under the particular facts and circumstances alleged, acting in the participants' best interests required HP to choose to use forfeitures to defray the plan's costs charged to participants' accounts rather than offset its own matching contributions.

2.  Whether the district court erred in dismissing Plaintiff's self-dealing claim for lack of a transaction where the statute does not by its terms require a transaction and where Plaintiff alleged that HP used assets in the plan as a credit toward its debt obligation to make matching contributions to the Plan.

The pertinent statutes are set forth in the Addendum to this brief.

3

## STATEMENT OF FACTS

Plaintiff Paul Hutchins is a participant in the HP Inc. 401(k) Plan ("Plan") whose account has been charged with a share of the Plan's expenses. (2-ER-226 (FAC ¶ 10).) The Plan is a defined contribution individual account plan sponsored by defendant HP Inc. ("HP" or "the Company"). (2-ER-226 (FAC ¶¶ 6, 8).) In addition to sponsoring the Plan, HP also administers the Plan through a "Committee of the Company." (2-ER-136 (Plan Doc. § 16(a)); 2-ER-145 (Plan Doc. § 21(k)); 2-ER-152 (Plan Doc. § 21(pp)).) This case concerns HP's administration of the Plan's forfeitures provision. (2-ER-231 (FAC ¶¶ 33-37).)

All expenses incurred by the Plan are "charged to and paid out of the Trust" unless HP, as the Plan's settlor, determines in its "complete and unfettered discretion" that "an expense" will be paid by the Company. (2-ER-138 (Plan Doc. § 17(b)).) When "paid out of the Trust," the specific assets used to pay the expenses are determined "pursuant to directions of the Company." (2-ER-138 (Plan Doc. § 17(b)).) As the Plan's administrator, HP directs whether to pay the expenses with assets in participants' accounts or forfeitures. (2-ER-120 (Plan Doc. § 11(h)); 2-ER-136 (Plan Doc. § 16(a)); 2-ER-138 (Plan Doc. § 17(b)).)

4

The Plan is funded by a combination of participant wage withholdings and Company contributions, each of which is deposited into the Plan's trust fund. (2-ER-227 (FAC ¶ 14).) The Plan obligates HP to make matching contributions "to the Plan" equal to 100% of the first 4% of a participant's compensation contributed to the Plan. (2-ER-107 (Plan Doc. § 5(d)); 2-ER-151 (Plan Doc. § 21(hh)); 2-ER-227 (FAC ¶15).) HP's matching contribution obligation accrues "each payroll period" throughout the year and must be paid to the Plan "as soon as reasonably practicable after the end of each calendar year." (2-ER-106 (Plan Doc. § 5(c)); 2-ER-107 (Plan Doc. § 5(d)); 2-ER-227 (FAC ¶ 15).) Accordingly, in January of each year, the matching contributions that have accrued throughout the prior calendar year become an outstanding and unpaid debt that HP owes the Plan. (2-ER-227 (FAC ¶ 15).)

Unless an exception applies, participants do not fully vest in matching contributions until they have completed three years of service. (2-ER-117 (Plan Doc. § 11(c)); 2-ER-228 (FAC ¶ 18).) Participants who separate from service before fully vesting in the matching contributions allocated to their accounts forfeit their right to the unvested contributions. (2-ER-119 (Plan Doc. § 11(f)); 2-ER-228 (FAC ¶ 19).)

5

When matching contributions are forfeited, the Plan provides a menu of options for how the forfeitures may be reallocated. (2-ER-120 (Plan Doc. § 11(h)); 2-ER-228 (FAC ¶ 19); 2-ER-229 (FAC ¶¶ 22-23).) The Plan entrusts HP, as the Plan's administrator, with discretion to choose an option on the menu. (2-ER-136 (Plan Doc. § 16(a)); 2-ER-145 (Plan Doc. § 21(k)); 2-ER-152 (Plan Doc. § 21(pp)); 2-ER-229 (FAC ¶ 22).) Among these options, the Plan provides that forfeitures "may be used" to "reduce employer contributions" or "pay Plan expenses." (2-ER-120 (Plan Doc. § 11(h)); 2-ER-229 (FAC ¶ 23).) Unlike other plans,[1] the Plan does not specify which option should take priority. (2-ER-120 (Plan Doc. § 11(h)).)

In deciding between using forfeitures to reduce employer contributions or pay Plan expenses, HP has a conflict of interest with the Plan's participants. (2-ER-229 (FAC ¶¶ 24-26).) On the one hand, HP has a financial incentive to choose to use forfeitures to offset its own contributions because that option saves the Company money. (2-ER-229

---

[1] *Compare Naylor v. BAE Sys., Inc.*, 2024 WL 4112322, at *6 (E.D. Va. Sept. 5, 2024) (requiring that forfeitures first be used to offset employer contributions), *with Walsh v. Allen*, 2022 WL 256312, at *3-4 (W.D. Ky. Jan. 26, 2022) (requiring that forfeitures be used to pay plan expenses).

6

(FAC ¶ 24).) On the other hand, absent a risk that HP would be unable to satisfy its matching contribution obligation, Plan participants would be better served by using forfeitures to pay Plan expenses. (2-ER-229 (FAC ¶ 25).) This is because that option would reduce or eliminate the amounts otherwise charged to their individual accounts to cover such expenses. (2-ER-229 (FAC ¶ 25).)

Despite the conflict of interest presented by this decision, the Company failed to undertake any investigation into which option was in the best interests of participants. (2-ER-229-30 (FAC ¶ 27).) HP did not, for example, investigate whether there was a risk that the Company would default on its accrued and outstanding matching contribution obligation if forfeitures were used to pay Plan expenses, or evaluate whether there were enough forfeitures to eliminate the Plan expenses charged to participants' accounts and still offset a portion of its matching contribution debt. (2-ER-230 (FAC ¶ 28).) Nor did HP consult with an independent non-conflicted decisionmaker to advise it in deciding upon the best course of action for reallocating forfeitures. (2-ER-230 (FAC ¶ 29).)

Instead, year after year, HP reflexively chose to act in its own self-interest by using all forfeitures to offset the Company's outstanding and unpaid matching contribution debt that had accrued during the prior year. (2-ER-230 (FAC ¶¶ 30-31); 2-ER-231 (FAC ¶¶ 33-37).) In making that choice, HP was motivated by its own financial interest and failed to consider the interests of the Plan's participants. (2-ER-230 (FAC ¶ 32).) Considering that HP had billions in cash on hand each year, there was never any risk that the Company would have defaulted on its matching contribution obligation had it refrained from using forfeitures to reduce its outstanding debt and, instead, used these Plan assets to defray the Plan's expenses borne by participants. (2-ER-230 (FAC ¶ 32).)

| YEAR | CONTRIBUTION DEBT OFFSET BY FORFEITURES | EXPENSES DEFRAYED BY FORFEITURES | EXPENSES CHARGED TO PARTICIPANTS |
|---|---|---|---|
| 2019 | $8,300,000 | $0 | $2,371,000 |
| 2020 | $4,700,000 | $0 | $1,631,000 |
| 2021 | $4,400,000 | $0 | $2,113,000 |
| 2022 | $1,600,000 | $0 | $2,434,000 |
| 2023 | $1,000,000 | $0 | $2,851,000 |

(2-ER-231 (FAC ¶¶ 33-37).)

8

## STATEMENT OF THE CASE

Plaintiff filed suit against HP and the HP Inc. Plan Committee ("Committee") in November 2023 on behalf of the Plan pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2) seeking to represent a class of participants and beneficiaries of the Plan. (2-ER-295-314 (Compl.).) Plaintiff alleged that HP and the Committee violated ERISA when they elected to reallocate forfeitures toward offsetting employer contributions rather than defraying Plan expenses. (2-ER-299-301 (Compl. ¶¶ 21-30).) Plaintiff's original complaint alleged six causes of action: (1) breach of ERISA's duty of loyalty in violation of 29 U.S.C. § 1104(a)(1)(A); (2) breach of ERISA's duty of prudence in violation of 29 U.S.C. § 1104(a)(1)(B); (3) inurement in violation of 29 U.S.C. § 1103(c)(1); (4) prohibited transactions in violation of 29 U.S.C. § 1106(a)(1); (5) self-dealing in violation of 29 U.S.C. § 1106(b)(1); and (6) failure to monitor fiduciaries. (2-ER-304-13 (Compl. ¶¶ 36-71).) HP and the Committee moved to dismiss the original complaint.

The district court held a hearing on the motion in May 2024. (2-ER- 241-94 (5-9-24 Tr.).) On June 17, 2024, the district court issued an order dismissing all claims with leave to amend. (1-ER-39.) As relevant

9

to this appeal,[2] the district court found that HP and the Committee "acted as fiduciaries when they determined how to [re]allocate forfeited amounts[,]" but they did not breach their fiduciary duties when they did so because "Plaintiff's theory of liability has broad reach, and it is the theory's breadth that makes it implausible." (1-ER-27, 29.) Regarding Plaintiff's self-dealing claim, the district court found it "implausible because Plaintiff fails to allege a prohibited transaction." (1-ER-38.)

Plaintiff filed an amended complaint in July 2024. (2-ER-224-40 (FAC).) As before, Plaintiff alleged that HP violated ERISA when it chose to use forfeitures to offset its contributions instead of defray Plan expenses. (2-ER-229-32 (FAC ¶¶ 22-38).) However, this time Plaintiff only alleged three causes of action against HP alone: (1) breach of ERISA's duty of loyalty in violation of 29 U.S.C. § 1104(a)(1)(A); (2) breach of ERISA's duty of prudence in violation of 29 U.S.C. § 1104(a)(1)(B); and (3) self-dealing in violation of 29 U.S.C. § 1106(b)(1). (2-ER-235-39 (FAC ¶¶ 44-62).) HP moved to dismiss the amended complaint.

---

[2] Plaintiff only seeks review of the district court's dismissal of his claims for breach of fiduciary duties and self-dealing.

The district court heard the motion in December 2024. (2-ER-41-84 (12-19-24 Tr.).) On February 5, 2025, the district court dismissed the amended complaint without leave to amend. (1-ER-19.) As before, the district court found that "the breadth of Plaintiff's theory continues to make it implausible" because "[i]t is still true that, under Plaintiff's theory, in every plausible instance where HP, as fiduciary, would be given the option between using forfeited funds to pay administrative costs or reduce employer contributions, the fiduciary would always be required to choose to pay administrative costs." (1-ER-11.) In dismissing Plaintiff's self-dealing claim, the district court again rejected "Plaintiff's argument that section 1106(b) can apply even to non-transactional 'dealing' with account assets." (1-ER-18.)

## SUMMARY OF ARGUMENT

Fiduciaries must act in the best interests of plan participants. Plaintiff plausibly alleges that HP violated this command when, over a period of many years, it opted to use all forfeitures in the Plan to offset its own contribution debt to the Plan rather than defray any of the Plan's expenses charged to participants and deducted from their accounts. The district court erred in concluding otherwise.

11

The district court erroneously asked whether in "every plausible instance" HP "would always be required" to use forfeitures to defray Plan expenses. The answer to that question does not resolve which use was best for participants in *this* instance. The district court never answered *that* question because it was so singularly focused on the "breadth" of Plaintiff's "theory."

It is undisputed that participants' account balances would have been greater had HP chosen to use forfeitures to defray Plan expenses. Yet, the district court concluded that HP was not obligated to choose that option because a fiduciary's duty to "maximize pecuniary benefits" is not "exclusive" of its duty to comply with the terms of the plan. That principle has no application where, as here, the Plan expressly authorizes using forfeitures to pay Plan expenses.

The district court also believed, incorrectly, that the Plan requires expenses to be paid with assets in participants' accounts as opposed to forfeitures. All that the Plan requires is that Plan expenses be "paid out of the Trust." Which trust assets will be used to pay the expenses is to be determined "pursuant to directions of the Company" made in a fiduciary, not settlor, capacity.

The district court relied on proposed Treasury regulations and a House Conference Report to support its conclusion that Plaintiff's "theory" conflicts with "decades of settled law." However, the authorities cited by the district court – guidance to plan sponsors about how to qualify their plans for favorable tax treatment – do not purport to relieve fiduciaries of their duty to act in the participants' best interests. The cited authorities allow plans to provide that forfeitures will be used to reduce employer contributions. They do not authorize a conflicted fiduciary to choose that option over another permissible option that better serves the participants' interests.

In addition to having to act in the best interests of participants, fiduciaries cannot "deal with" assets of a plan in their own interest. It is undisputed that HP "dealt with" Plan assets in the Company's own interest when it used forfeitures *in* the Plan as a credit toward its debt obligation to make matching contributions *to* the Plan. The district court erred in dismissing Plaintiff's self-dealing claim for lack of a transaction both because the statute does not by its terms require a transaction and because Plaintiff adequately alleged an extension of credit transaction between HP and the Plan.

13

# ARGUMENT

The district court's order granting HP's motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is reviewed de novo. *Doe v. Grindr Inc.*, 128 F.4th 1148, 1152 (9th Cir. 2025). All allegations of material fact are accepted as true, even if doubtful in fact, and are construed in the light most favorable to Plaintiff. *Salas v. United States*, 116 F.4th 830, 845 (9th Cir. 2024), *cert. denied*, -- S. Ct. --, 2025 WL 951159 (Mar. 31, 2025).

## I.    PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIMS ARE PLAUSIBLE.

"To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege that (1) the defendant was a fiduciary; and (2) the defendant breached a fiduciary duty; and (3) the plaintiff suffered damages." *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1026 (9th Cir. 2021). HP's motions to dismiss only challenged the first two elements. In ruling on those motions, the district court correctly found that HP was acting as a fiduciary when choosing how to reallocate forfeitures but erred in concluding that Plaintiff had not plausibly alleged any breach of fiduciary duty.

14

## A. HP Acted as a Fiduciary When Reallocating Forfeitures.

In determining whether a party's conduct is governed by ERISA's fiduciary duties, "the central inquiry is whether the party was acting as an ERISA fiduciary 'when taking the action subject to complaint.'" *Santomenno v. Transam. Life Ins. Co.*, 883 F.3d 833, 838 (9th Cir. 2018) (quoting *Pegram*, 530 U.S. at 226). The "action subject to complaint" here is HP's annual decisions to use all forfeitures to reduce its matching contributions rather than defray any of the Plan's expenses. (2-ER-230 (FAC ¶¶ 30-38).) The district court correctly found that HP acted as a fiduciary when it "determined how to [re]allocate forfeited amounts." (1-ER-27.) This is so for two independent reasons.

First, ERISA provides that a person is a fiduciary "to the extent" they "exercise any authority or control respecting management or disposition of [plan] assets." 29 U.S.C. § 1002(21)(A)(i). "'Any' control over disposition of plan money makes the person who has the control a fiduciary." *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1421 (9th Cir. 1997) (ERISA "require[s] that a person with authority to direct payment of a plan's money be deemed a fiduciary"). Here, it is

15

undisputed that forfeitures are "plan assets."[3] (1-ER-32.) Therefore, HP

acted as a fiduciary when it controlled how forfeitures were reallocated.

Second, ERISA deems a person to be a fiduciary "to the extent"

they have "any discretionary authority or discretionary responsibility in

[plan] administration." 29 U.S.C. § 1002(21)(A)(iii). "[T]his type of

'discretion' often arises when contractual terms allow a party to select

from a range of options in performing its obligations." *Mass. Laborers'*

*Health & Welfare Fund v. Blue Cross Blue Shield of Mass.*, 66 F.4th

307, 318 (1st Cir. 2023). Here, the Plan document allows HP, as the

Plan's administrator, to choose among a menu of options for reallocating

forfeitures. (2-ER-120 (Plan Doc. § 11(h)); 2-ER-136 (Plan Doc. § 16(a)).)

Accordingly, HP acted as a fiduciary when it made its choice. *Waller v.*

*Blue Cross of Cal.*, 32 F.3d 1337, 1342 (9th Cir. 1994) (holding that

employer acted as a fiduciary when choosing an annuity provider).

---

[3] At oral argument, HP's counsel stated that while "there is potentially
an argument that [forfeitures] aren't truly plan assets," HP had not
"made it." (2-ER-79 (12-19-24 Tr.).) And for good reason. Contributions
become plan assets once they are paid to a plan. *Bos v. Bd. of Trs.*, 795
F.3d 1006, 1010-11 (9th Cir. 2015); *Cline v. Indus. Maint. Eng'g & Cont.
Co.,* 200 F.3d 1223, 1234 (9th Cir. 2000). *See also* 29 U.S.C. § 1103(c)(1)
& (2) (providing that paid contributions are "assets of a plan" that
cannot be returned to the employer except in limited circumstances).

Although the district court correctly found that "HP acts as a fiduciary when it takes the concrete action of [re]allocating forfeitures," it mistakenly believed that "HP (as fiduciary) will only use those forfeitures to pay Plan expenses when HP (as settlor) decided that the Plan administrator should use at least some forfeitures to pay Plan expenses." (1-ER-9, 10.) Settlor decisions "concern[] the composition or design of the plan itself" whereas fiduciary decisions "consist of such actions as the administration of the plan's assets." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999). Thus, while HP acted as a settlor when it designed the Plan to require that Plan expenses "be charged to and paid out of the Trust pursuant to directions of the Company," (2-ER-138 (Plan Doc. § 17(b)), it acted as a fiduciary when it subsequently directed that the expenses be paid with assets in participants' accounts rather than forfeitures. *Trs. of S. Cal. Bakery Drivers Sec. Fund v. Middleton*, 474 F.3d 642, 646 (9th Cir. 2007) ("[A]n entity that takes 'actions in regard to the[] management and disposition [of plan assets] must be judged against ERISA's fiduciary standards'") (quoting *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 106 (1993)).

17

## B. HP Breached its Fiduciary Duties.

"Under ERISA, a fiduciary is required to discharge its duties 'solely in the interest of the participants and beneficiaries.'" *Acosta v. Pac. Enters.*, 950 F.2d 611, 618 (9th Cir. 1991) (quoting 29 U.S.C. § 1104(a)(1)). ERISA also "imposes a 'prudent person' standard by which to measure fiduciaries' investment decisions and disposition of assets." *Fifth Third Bancorp. v. Dudenhoeffer*, 573 U.S. 409, 419 (2014); 29 U.S.C. § 1104(a)(1)(B). Taken together, these duties require that fiduciaries "act in the best interests of the plan participants and beneficiaries." *Barker,* 64 F.3d at 1403. *See also Leigh v. Engle,* 727 F.2d 113, 122 (7th Cir. 1984) ("ERISA expressly prohibits the use of assets for purposes other than the best interests of beneficiaries"). These duties are "the highest known to the law." *Johnson v. Couturier*, 572 F.3d 1067, 1077 (9th Cir. 2009).

The duty to act "solely in the interest" of participants and beneficiaries focuses on the fiduciary's subjective "motivation" for a decision, *Pilkington PLC v. Perelman*, 72 F.3d 1396, 1401 (9th Cir. 1995), while the duty of prudence focuses on the "thoroughness of the investigation" in reaching a decision, *Howard v. Shay*, 100 F.3d 1484,

18

1488 (9th Cir. 1996). The "twin duties of prudence and loyalty" are both implicated when, as here, a fiduciary is alleged to have acted with a "conflict of interest." *Pilkington*, 72 F.3d at 1398, 1401-02.

### 1. HP Failed to Act Solely in the Interest of Participants.

As this Court has emphasized, the "statute places a core obligation on an ERISA fiduciary to 'discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries.'" *Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1064, 1071 (9th Cir. 2005) (quoting 29 U.S.C. § 1104(a)(1)); *see also Bin v. Exxon Co. U.S.A.*, 220 F.3d 1042, 1048 (9th Cir. 2000) (en banc) ("The core obligation of an ERISA fiduciary is to" act "solely" in the interest of participants).

While a decision "made solely to benefit" the fiduciary would, of course, violate this core obligation, "the fiduciary standard condemns far more than that, in its requirement of 'an eye single' toward beneficiaries' interests." *Pegram,* 530 U.S. at 235 (citation omitted). Fiduciaries must have "complete loyalty to the interests of the beneficiary" and "exclude all selfish interest and all considerations of the interests of third persons." *Id.* at 224 (citation omitted). This "command" is "unequivocal." *Pilkington*, 72 F.3d at 1401.

19

Accordingly, "conflicts of interest can violate ERISA's loyalty requirement." *Id*. Whether they do turns on the subjective "motivation" for the fiduciary's decision. *Id*. at 1401-02. "[W]hen a fiduciary's actions that are taken in connection with the performance of [its] duties as [an] administrator are in [its] own interest as well," courts must "rigorously scrutinize the conduct." *Cunha v. Ward Foods, Inc.*, 804 F.2d 1418, 1432 (9th Cir. 1986). *See also Leigh*, 727 F.2d at 127 ("[T]he risk of conflicts between the interests of the fiduciaries and beneficiaries is the key warning signal for possible misuse of plan assets.").

Here, Plaintiff alleges facts showing that HP had a conflict of interest when reallocating forfeitures and that, over a period of several years, it uniformly chose to reallocate all forfeitures to further its own self-interest rather than the interests of the Plan's participants.

HP, as the Plan's administrator, is entrusted with deciding between the Plan's options for reallocating forfeitures. (2-ER-120 (Plan Doc. § 11(h)); 2-ER-136 (Plan Doc. § 16(a)); 2-ER-228-29 (FAC ¶¶ 19, 22, 23).) Among the available options, the Plan provides that "forfeited" amounts "may be used" to "reduce employer contributions" or "pay Plan expenses." (2-ER-120 (Plan Doc. § 11(h)); 2-ER-229 (FAC ¶ 23).)

20

In deciding between these options, HP has a financial incentive to always choose to use forfeitures to reduce its own contributions. (2-ER-229 (FAC ¶ 24).) This is because that option decreases the company's contribution costs, (2-ER-229 (FAC ¶ 24)), insofar as every forfeiture "dollar" reallocated toward reducing HP's contributions "is a dollar that will not need to be contributed to fund the trust." *Burke v. Pitney Bowes, Inc. Long-Term Disability Plan*, 544 F.3d 1016, 1026 (9th Cir. 2008).

Absent a risk that HP would be unable to satisfy its matching contribution obligation, it is in the best interests of participants to use forfeitures to pay Plan expenses because that option reduces or eliminates the amounts charged to their accounts to cover such expenses. (2-ER-229 (FAC ¶ 25).) Unless HP elects to use forfeitures to pay Plan expenses, the expenses are deducted from the participants' accounts, which reduces the funds available to participants for distribution and/or investing. (2-ER-228-29 (FAC ¶¶ 20-21).)

In each year between 2019 and 2023, the Plan incurred more than $1 million in expenses. (2-ER-231 (FAC ¶¶ 33-37).) During each of those years, the Plan had more than $1 million in forfeitures that, under the Plan's terms, could have been used to pay these expenses, thereby

reducing or eliminating the need to deduct such expenses from the participants' accounts. (2-ER-228, 229, 231 (FAC ¶¶ 20, 23, 33-37).) Throughout this period, HP had more than $3 billion in cash and equivalents on hand and was under no risk of defaulting on its matching contribution obligation to the Plan. (2-ER-230 (FAC ¶ 32).)

Even though the Plan makes forfeitures available to pay Plan expenses, in each of those years HP declined to use any forfeitures to pay any of the Plan's expenses. (2-ER-229, 230-31 (FAC ¶¶ 23, 30-37).) "Instead of acting solely in the interest of Plan participants by utilizing forfeited funds in the Plan to reduce or eliminate the administrative expenses charged to their individual accounts," HP repeatedly "chose to use these Plan assets" solely for the "purpose of reducing HP's outstanding and unpaid matching contributions to the Plan, thereby saving the Company millions of dollars at the expense of . . . participants and beneficiaries who were forced to incur avoidable expense deductions to their individual accounts."[4] (2-ER-230, 235-36

---

[4] "[T]he consistent management of plan assets in congruence with the fiduciaries' personal interests over a substantial period of time . . . may be probative of whether the fiduciaries have acted solely in the interests of the beneficiaries." *Leigh,* 727 F.2d at 127.

22

(FAC ¶¶ 30-32, 47).) "In making this decision," HP was improperly "motivated" by its own self-interest "rather than the interests of the Plan's participants and beneficiaries." (2-ER-230, 236 (FAC ¶¶ 32, 48).)

These factual allegations plausibly show that HP's "motivation" for reallocating forfeitures "may have deviated from that mandated by ERISA[.]" *Pilkington*, 72 F.3d at 1401. *See also McManus v. Clorox Co.*, 2025 WL 732087, at *4 (N.D. Cal. Mar. 3, 2025) ("Plaintiff's argument that defendants were motivated solely by self-interest . . . is plausible given that no other explanation is readily apparent"); *Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935, 943 (N.D. Cal. 2024) ("The complaint plausibly alleges that Intuit acted in contravention of ERISA's mandate to provide benefits solely in the interest of participants and beneficiaries when it chose to use forfeitures to reduce its own contributions"); *Perez-Cruet v. Qualcomm Inc.*, 2024 WL 2702207, at *2 (S.D. Cal. May 24, 2024) ("Plaintiff plausibly claims that the Defendants breached their fiduciary duty to Plan participants by making a choice that put the employer's interests above the interests of the Plan participants.").

## 2. HP Failed to Act Prudently.

"An ERISA fiduciary must discharge his responsibility 'with the care, skill, prudence, and diligence' that a prudent person 'acting in a like capacity and familiar with such matters' would use." *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197 (9th Cir. 2016) (citation omitted). In evaluating prudence, "the court focuses not only on the merits of the transaction, but also on the thoroughness of the investigation into the merits of the transaction." *Id.* (citation omitted). "[T]he absence of a deliberative process may be enough to demonstrate imprudence." *Sacerdote v. New York Univ.*, 9 F.4th 95, 111 (2d Cir. 2021).

"When it is 'possible to question the fiduciaries' loyalty, they are obliged at a minimum to engage in an intensive and scrupulous independent investigation of their options to insure that they act in the best interests of the plan beneficiaries.'" *Howard*, 100 F.3d at 1488-89 (quoting *Leigh*, 727 F.2d at 125-26). A "careful and impartial investigation" is "needed to justify actions which would, at least incidentally, benefit" the fiduciary. *Leigh,* 727 F.2d at 125. "Where the potential for conflicts is substantial, it may be virtually impossible for fiduciaries to discharge their duties with an 'eye single' to the interests

24

of the beneficiaries, and the fiduciaries may need to step aside, at least temporarily, from the management of assets where they face potentially conflicting interests." *Id.*

Here, as already discussed, HP had a financial incentive to always choose to use forfeitures to reduce its own contributions rather than pay Plan expenses. (2-ER-229 (FAC ¶¶ 24-26).) "Despite the conflict of interest presented by this decision," HP "failed to undertake any reasoned and impartial decision-making process to determine that using the forfeitures in the Plan to reduce the Company's own contribution expenses, as opposed to the Plan's administrative expenses deducted from participants' accounts, was in the best interest[s] of the participants or was prudent, and failed to consider whether participants would be better served by another use of these Plan assets after considering all relevant factors." (2-ER-237 (FAC ¶ 54).)

HP "did not, for example, investigate whether there was a risk that [it] would be unable to satisfy its contribution obligations if forfeitures were used to pay Plan expenses, or evaluate whether there were sufficient forfeitures to eliminate the Plan expenses charged to participants and still offset a portion of [its] contribution obligations."

(2-ER-230 (FAC ¶ 28).) Nor did HP "consult with an independent nonconflicted decisionmaker to advise [it] in deciding upon the best course of action for [re]allocating forfeitures." (2-ER-230 (FAC ¶ 29).) Instead, each year, HP "reflexively" chose "to use the forfeitures for [its] own interest, to the detriment of the . . . participants, by [re]allocating all forfeitures toward reducing the Company's outstanding and unpaid contributions to the Plan." (2-ER-230 (FAC ¶ 31).)

These factual allegations plausibly show that HP acted imprudently in administering the Plan's forfeitures provision. *See Leigh,* 727 F.2d at 127-129 (finding that plan administrators "violated ERISA's fiduciary requirements" because they faced "clearly conflicting loyalties," but "undertook no genuinely independent investigation" of their "options" and "continued to exercise control over the plan assets in ways that directly benefited" themselves). *See also McManus*, 2025 WL 732087, at *4 ("Plaintiff's argument that defendants . . . conducted no reasoned and impartial decision-making process is plausible given that no other justification is readily apparent."); *Rodriguez*, 744 F. Supp. 3d at 943 (Plaintiff "stated a plausible claim for breach of the duty of prudence" by alleging "that a prudent employer in this particular

26

context would have at minimum engaged in a 'reasoned and impartial decision-making process' considering 'all relevant factors' before determining how to use the forfeited funds in the best interest[s] of the participants and beneficiaries"); *Perez-Cruet*, 2024 WL 2702207, at *3 ("[B]y allegedly acting against the best interests of the Plan participants, Plaintiff has articulated a plausible claim of a breach of the duty of prudence.").

## II.  THE DISTRICT COURT ERRED IN DISMISSING PLANTIFF'S BREACH OF FIDUCIARY DUTY CLAIMS.

### A. The District Court Applied the Wrong Legal Standard.

To survive a motion to dismiss, a plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014). "The plausibility of a pleading thus derives from its well-pleaded factual allegations." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021). Dismissal is appropriate "only if the complaint fails to allege enough facts to state a claim to relief that is plausible on its face." *Watanabe v. Derr*, 115 F.4th 1034, 1037 (9th Cir. 2024) (citation omitted). A claim to relief "is plausible on its face" where "'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

27

liable for the misconduct alleged.'" *Ryan S. v. UnitedHealth Group, Inc.*, 98 F.4th 965, 970 (9th Cir. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Instead of asking whether it is reasonable to infer from Plaintiff's factual allegations that HP breached its fiduciary duties, the district court asked whether "[i]t is still true that, under Plaintiff's theory, in every plausible instance where HP, as fiduciary, would be given the option between using forfeited funds to pay administrative costs or reduce employer contributions, the fiduciary would always be required to choose to pay administrative costs." (1-ER-11.) The district court erred by straying from Plaintiff's factual allegations and focusing instead on whether "the breadth of Plaintiff's theory continues to make it implausible." (1-ER-11.) *See Fifth Third*, 573 U.S. at 425 ("[T]he appropriate inquiry" when evaluating the plausibility of an ERISA fiduciary duty claim "will necessarily be context specific").

Under the district court's reasoning, Plaintiff's claims could only be plausible in this specific context if he could point to some hypothetical "plausible instance" where HP could lawfully choose to use forfeitures to reduce employer contributions. But that is not Plaintiff's

burden. Plaintiff need not conjure up a scenario in which HP could lawfully do what it did. Plaintiff need only plead enough facts to support a reasonable inference that HP breached its fiduciary duties when, in these particular circumstances, it opted to use forfeitures to reduce its own contributions rather than defray expenses. The district court lost sight of the facts alleged here, and applied the wrong legal standard, when it found Plaintiff's claims implausible because "in every plausible instance" HP "would always be required" to use forfeitures to pay Plan costs. (1-ER-11.) *See Disability Rts. Mont., Inc. v. Batista*, 930 F.3d 1090, 1098 (9th Cir. 2019) (reversing dismissal because the district court "did not engage with the factual allegations" as required by "the *Twombly/Iqbal* pleading standard").

Not only did the district court ask the wrong question, but it also reached the wrong answer. The "theory" that the district court found "evinced an implausible breadth" (1-ER-15) is simply that, when given a choice among a menu of options for reallocating plan assets, a fiduciary must endeavor to choose the option that is best for participants. *Pegram*, 530 U.S. at 235 (fiduciaries must act with "'an eye single' toward beneficiaries' interests") (citation omitted); *Barker*, 64 F.3d at

1403 ("A fiduciary has a duty to act in the best interests of the plan participants and beneficiaries."). To the extent that theory would "always" require HP to choose to use forfeitures to pay administrative costs, it is only because, among the available options for how forfeitures can be used, that one is always best for participants. That is a function of the Plan's design, not Plaintiff's theory. There is nothing implausible about that outcome where, as here, "the Plan is set up in a way that allows a fiduciary to decide who saves money[.]" *McManus*, 2025 WL 732087, at *4 n.6. Because the Plan is designed this way, ERISA requires "that the fiduciary decide in favor of those it owes duties."[5] *Id.*

The district court never explained how, under the facts and circumstances alleged, using forfeitures to reduce HP's contributions was in the participants' best interests. The district court assumed that "the fiduciary duty is fulfilled" so long as "the fiduciary ensures that participants have received their promised benefits." (1-ER-12.) However, unlike defined benefit plans, defined contribution plans do not promise a specific benefit. Rather, the "employer's contribution" to the

---

[5] If HP does not like this result, it is free to redesign the Plan. *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996).

Plan "is fixed" and participants are "entitled to the balance of the[ir] account[s]" within the plan "upon retirement." *Hughes*, 525 U.S. at 439. "[T]he ultimate amount of money" participants receive at retirement thus "depend[s] on how well the trust is managed" and "every penny of gain or loss is at the beneficiaries' risk." *Thole v. U.S. Bank N.A.,* 590 U.S. 538, 542 (2020).

Here, everyone agrees that the participants' account balances would have been greater had HP chosen to use forfeitures to defray the Plan's expenses. Therefore, the district court erred in dismissing Plaintiff's claims because he did not allege that participants "received less than the full employer contributions promised" or paid administrative costs that "were excessive or unnecessary." (1-ER-9.)

## B. The District Court Misread *Wright*.

The district court disagreed that HP's duty to act in the best interests of participants required the Company to reallocate forfeitures toward expenses because it believed that such a requirement "is at odds with" this Court's decision in *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004). (1-ER-9.)  The district court was mistaken.

31

The issue in *Wright* was whether ERISA's fiduciary duties required the company "to amend the Plan to permit the participants to sell a higher percentage of employer securities allocated to their Plan accounts than the percentage permitted by the Plan's express terms." 360 F.3d at 1096. Absent such a plan amendment, selling more company stock "would have been in violation of the Plan's express terms." *Id.* at 1097. This Court held that the company was "under no legal obligation to deviate from those terms" because a fiduciary's duty to "maximize pecuniary benefits" for participants is not "exclusive" of its duty "to comply with a plan as written unless it is inconsistent with ERISA." *Id.* at 1100.

Unlike in *Wright*, Plaintiff is not arguing that ERISA's fiduciary duties required HP to deviate from the Plan's terms. Whereas the plaintiffs in *Wright* argued that ERISA's fiduciary duties required the company to permit them to sell more employer securities "in violation of the Plan's express terms," *id.* at 1097, here Plaintiff argues only that HP should have used forfeitures to pay Plan expenses, an option the Plan expressly allows. (2-ER-120 (Plan Doc. § 11(h)).) Thus, unlike in *Wright*, there is no tension here between the duty "to maximize

32

retirement savings for participants," *Fifth Third*, 573 U.S. at 420, and the duty to follow the Plan's terms as written, 29 U.S.C. § 1104(a)(1)(D). *Wright's* statement that the former duty is not "exclusive" of the latter duty is not implicated here because the duties are in harmony, not competition.[6]

### C. The District Court Misconstrued the Plan Document.

The district court also found Plaintiff's claims to be "at odds" with § 17(b) of the Plan. (1-ER-9.) That section imposes a default requirement that all Plan expenses be "paid out of the Trust." (2-ER-138 (Plan Doc. § 17(b)).) The district court construed "Plaintiff's theory" to "require the Court to find that the language of Plan § 11(h)" governing reallocation of forfeitures, "in combination with ERISA's general fiduciary duty provisions, overrides the language of Plan § 17(b)" requiring Plan expenses to be "paid out of the Trust." (1-ER-10.)

---

[6] The other cases on which the district court relied are inapplicable for the same reason. *See Collins v. Pension & Ins. Comm. of S. Cal. Rock Prod. & Ready Mixed Concrete Assocs.*, 144 F.3d 1279, 1282 (9th Cir. 1998) (holding that fiduciary duties did not require administrator to "amend the plan to increase benefits"); *Foltz v. U.S. News & World Report, Inc.*, 865 F.2d 364, 368, 370-74 (D.C. Cir. 1989) (holding that fiduciary duties did not require calculating benefits using a formula that contravened an "explicit directive of the Plan document").

However, Plaintiff is not challenging HP's settlor decision to require that Plan expenses be "paid out of the Trust." Rather, Plaintiff is challenging HP's fiduciary decisions to pay Plan expenses "out of the Trust" using assets in participants' accounts instead of forfeitures. (2-ER-228 (FAC ¶¶ 20-23).) As the district court noted, it is undisputed that forfeitures "remain Plan assets" that are "part of the Plan's trust fund." (1-ER-32, 34, 37.) As such, when forfeitures are used to pay Plan expenses, the expenses are paid "out of the Trust," not the Company's coffers. Contrary to the district court's mischaracterization, § 17(b) does not require Plan expenses to be "charged to Plan participant accounts" as opposed to forfeitures. (1-ER-10; 2-ER-138 (Plan Doc. § 17(b)).)

The district court also erred in finding that Plaintiff is seeking "an additional benefit that HP did not offer." (2-ER-14.) The Plan makes "amounts forfeited" available to "pay Plan expenses." (2-ER-120 (Plan Doc. § 11(h)).) Plaintiff does not contend that HP was required to design the Plan that way. But because the Plan does make forfeitures available to "pay Plan expenses," forfeitures must be reallocated to that use when it is in the best interests of participants to do so. *Pegram*, 530 U.S. at 235; *Barker*, 64 F.3d at 1403. "In other words, [P]laintiff does not ask

34

for more than what the Plan promised; he claims that the Plan, when read in conjunction with ERISA's fiduciary duty statutes, promises a particular outcome." *McManus*, 2025 WL 732087 at *4 n.6.

Under no circumstance would using forfeitures to pay Plan expenses ever increase HP's contributions above the level HP agreed to pay into the Plan. (2-ER-107 (Plan Doc. § 5(d)).) Nor would it ever require HP, as opposed to the Plan's trust fund, to pay Plan expenses. (2-ER-138 (Plan Doc. § 17(b)).) Thus, Plaintiff is not seeking an "additional benefit" beyond what the Plan itself provides.

### D. The District Court Misapplied Tax Guidance.

The district court found that "Plaintiff's theory seems to ignore decades of settled law." (1-ER-10.) The "decades of settled law" cited by the district court consists of regulations proposed by the Treasury Department in 2023 and a House Conference Report accompanying the Tax Reform Act of 1986. (1-ER-10.) According to the district court, "Plaintiff effectively asserts that the general fiduciary duty provision of ERISA abrogates these long-settled rules regarding the use of forfeitures in defined contribution plans." (1-ER-10-11.)

Even accepting the district court's questionable characterization of the cited authorities as "long-settled rules,"[7] Plaintiff's theory does not "abrogate" them. The cited authorities provide guidance about how plans can qualify for favorable tax treatment, not about how fiduciaries can comply with their duties under ERISA. To the extent they have any relevance, the cited authorities allow plans to provide that forfeitures will be used to reduce employer contributions. Plaintiff does not contend that ERISA would prohibit designing a plan that way. Plaintiff's position is simply that, when a plan provides a fiduciary with a choice of how to use forfeitures, ERISA requires the fiduciary to endeavor to choose the use that is best for participants. *Pegram*, 530 U.S. at 235; *Barker*, 64 F.3d at 1403.

Nothing in the cited authorities purports to relieve fiduciaries of that core ERISA obligation. While the cited authorities permit plans to provide that forfeitures will be used to reduce employer contributions, they do not authorize a conflicted employer-fiduciary to decide upon

---

[7] Neither the proposed regulations nor the conference report has the force of law. *Tedori v. United States*, 211 F.3d 488, 492 (9th Cir. 2000) ("[P]roposed regulations carry no more weight than a position advanced on brief"); *Hunley v. Instagram, LLC*, 73 F.4th 1060, 1072 (9th Cir. 2023) ("[L]egislative history is not law").

that use when another permissible use would be better for participants. The district court erred in reasoning that because the cited authorities allow forfeitures to be used to reduce employer contributions, HP could not have breached its fiduciary duties when it chose to use forfeitures for that purpose here.

The district court's reasoning is contrary to the Supreme Court's decision in *Fifth Third*. There, the fiduciaries of an Employee Stock Ownership Plan ("ESOP") – "a type of pension plan that invests primarily in the stock of the company that employs the plan participants" – continued to hold and buy company stock after they allegedly knew or should have known that the stock had become overvalued and excessively risky. 573 U.S. at 412-13. A unanimous Supreme Court held that the fiduciaries could have breached their duty of prudence notwithstanding that "Congress sought to encourage the creation of ESOPs" both "by promoting ESOPs with tax incentives" and "by exempting ESOPs from ERISA's diversification requirement, which otherwise would have precluded their creation." *Id.* at 422, 424, 426.

Under the district court's logic here, *Fifth Third* would have been decided differently. The breach of fiduciary duty claim would have been

37

dismissed as implausible because ESOP fiduciaries are authorized by law to invest in company stock. Indeed, "the very purpose of an ESOP is to invest in a single stock, that of the employer of the ESOP's participants." *Summers v. State St. Bank & Tr. Co.*, 453 F.3d 404, 406 (7th Cir. 2006). Yet, the Supreme Court unanimously agreed that the ESOP fiduciaries could have plausibly breached their duties by continuing to do exactly that. *Fifth Third*, 573 U.S. at 426.

If the fiduciaries in *Fifth Third* could have plausibly breached their duties notwithstanding the strong Congressional policy promoting ESOPs, then surely HP could have plausibly breached its duties notwithstanding that proposed Treasury regulations and a House Conference Report permit using forfeitures to reduce contributions.

## III.  THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFF'S SELF-DEALING CLAIM.

When it comes to plan assets, Section 406(b)(1) of ERISA, 29 U.S.C. § 1106(b)(1), categorically prohibits all fiduciary self-dealing. It provides, without exception, that a fiduciary "shall not deal with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1). Plaintiff alleges that HP violated this prohibition "[b]y [re]allocating . . . Plan assets toward offsetting the Company's

outstanding and unpaid matching contributions owing to the Plan, thereby saving the Company millions of dollars in contribution expenses[.]" (2-ER-239 (FAC ¶ 60).) In dismissing Plaintiff's self-dealing claim, the district court rejected "Plaintiff's argument that section 1106(b) can apply even to non-transactional 'dealing' with account assets." (1-ER-18.) The district court erred for the following reasons.

## A. Section 1106(b)(1) is not Limited to Transactional Dealing.

"The preeminent canon of statutory interpretation requires" courts "to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'" *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (quoting *Conn. Nat. Bank v. Germain,* 503 U.S. 249, 253–54 (1992)). "Thus," a court's "inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *Id. See also Mi Familia Vota v. Fontes*, 129 F.4th 691, 712 (9th Cir. 2025) (same). Here, the text of the statute unambiguously prohibits all self-dealing, regardless of whether the dealing is transactional or non-transactional.

Section 1106(b) provides:

A fiduciary with respect to a plan shall not—

39

(1) *deal with* the assets of the plan in his own interest or for his own account,

(2) in his individual or in any other capacity *act in any transaction* involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or

(3) receive any consideration for his own personal account from any party *dealing with such plan in connection with a transaction* involving the assets of the plan.

29 U.S.C. § 1106(b) (emphasis added).

On its face, § 1106(b)(1) applies when fiduciaries "deal with" plan assets in their own interests. "[T]he dictionary definition of 'deal' when used in conjunction with 'with' is broad." *McMaken v. GreatBanc Tr. Co.*, 2019 WL 1468157, at *7 (N.D. Ill. Apr. 3, 2019). "Specifically, it means to 'take action with regard to someone or something.'" *Id.* (quoting Merriam-Webster's Collegiate Dictionary, 11th Ed. (2003)). Consistent with the dictionary definition of the term "deal with," this Court has stated that a fiduciary violates § 1106(b)(1) when it "uses the assets of a plan for its own benefit." *Friend v. Sanwa Bank Cal.*, 35 F.3d 466, 470 (9th Cir. 1994). Caselaw elucidates that fiduciaries can violate § 1106(b)(1) without engaging in a transaction with the plan.

40

For example, in *Patelco Credit Union v. Sahni*, 262 F.3d 897 (9th Cir. 2001), the plan administrator misappropriated benefits checks from the plan's insurance provider. The administrator did not engage in any commercial bargain with the plan; he simply took for himself money that belonged to the plan. Notwithstanding the lack of any transaction, this Court held that the administrator engaged in "prohibited self-dealing" that was "in violation of § 1106(b)(1)." *Id.* at 911.

Similarly, in *Guyan International, Inc. v. Professional Benefits Administrators, Inc.*, 689 F.3d 793 (6th Cir. 2012), the administrator misappropriated plan contributions. Despite the absence of any transaction with the plan, the Sixth Circuit "easily conclude[d]" that the misappropriation constituted "a classic case of self-dealing" in violation of § 1106(b)(1) because the administrator "us[ed] Plan assets – money from the employers and the covered employees – for its own purposes."[8] *Id.* at 798-99.

---

[8] *See also Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 98 (3d Cir. 2012) (acknowledging that a fiduciary who "siphoned off" plan contributions would likely violate § 1106(b)(1)); *Milgram v. Orthopedic Assocs. Defined Contribution Pension Plan*, 666 F.3d 68, 77 (2d Cir. 2011) (recognizing that § 1106(b)(1) would likely prohibit a fiduciary from choosing to "use plan assets to satisfy" a judgment against it). Neither scenario necessitates a transaction between the fiduciary and the plan.

41

When Congress wanted to limit the statute to transactions with the plan or its assets, it said so expressly. In § 1106(b)(2), Congress prohibited fiduciaries from acting on behalf of an adverse party "in any transaction involving the plan[.]" 29 U.S.C. § 1106(b)(2). Likewise, in § 1106(b)(3), Congress prohibited fiduciaries from receiving any consideration from a party dealing with the plan "in connection with a transaction involving the assets of the plan." *Id.* § 1106(b)(3). By contrast, in § 1106(b)(1), Congress made it unlawful for fiduciaries to "deal with" plan assets in their own interest or for their own account and omitted the word "transaction." *Id.* § 1106(b)(1).

"'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *City & Cnty. of San Francisco v. EPA*, 145 S. Ct. 704, 713–14 (2025) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). "Had Congress intended to restrict" § 1106(b)(1) to transactions, "it presumably would have done so expressly as it did in" both § 1106(b)(2) and § 1106(b)(3). *Russello*, 464 U.S. at 23.

42

That the term "deal with" encompasses more than transactional dealing is confirmed by § 1106(b)(3), which prohibits plan fiduciaries from receiving compensation from any party "*dealing with* such plan *in connection with a transaction* involving the assets of the plan."[9] 29 U.S.C. § 1106(b)(3) (emphasis added). It would be redundant for Congress to specify that the dealing must be "in connection with a transaction" if the term "deal with" is limited to transactional deals. "If one possible interpretation of a statute would cause some redundancy and another interpretation would avoid redundancy, that difference in the two interpretations can supply a clue as to the better interpretation of a statute." *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019). *See also Estate of Finnigan v. United States*, 2 F.4th 793, 805 (9th Cir. 2021) (rejecting interpretation of statute that resulted in "redundancies").

In the end, courts "must enforce plain and unambiguous statutory language in ERISA, as in any statute, according to its terms." *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 184 (2020). This Court

---

[9] "In interpreting statutes, the same words or phrases are presumed to have the same meaning when used in different parts of a statute." *Salas*, 116 F.4th at 841 (citation omitted).

43

applied this principle to its interpretation of § 1106 in *Bugielski v. AT&T Services, Inc.*, 76 F.4th 894 (9th Cir. 2023). The question there was whether § 1106(a)(1)(C) – which prohibits the "furnishing of goods, services, or facilities between a plan and a party in interest" – applied to arm's-length transactions. That statute "contains no language limiting its application to non-arm's-length transactions" and this Court "decline[d] to read additional limitations, requirements, or exceptions into the statutory text." *Id.* at 901. This Court was "particularly reluctant to adopt an atextual interpretation of" the statute because of "ERISA's complex and carefully crafted nature." *Id.*

In construing § 1106(b)(1) to require a transaction even though the text of the statute does not use the word "transaction," the district court here adopted an "atextual interpretation of" § 1106 contrary to this Court's holding in *Bugielski*. To justify its departure from the statute's "carefully crafted" text, the district court primarily relied on two cases, neither of which supports its "atextual interpretation."

First, the district court relied on *Lockheed Corporation v. Spink*, 517 U.S. 882 (1996), for the proposition that "using plan assets to pay plan benefits is not a 'transaction' under the prohibited transactions

44

provisions of ERISA."[10] (1-ER-18.) However, the issue in *Spink* was whether there was a "'transaction' *in the sense that Congress used that term in § 406(a).*" *Id.* at 892–93 (emphasis added). Section 406(a) of ERISA prohibits fiduciaries from causing the plan to engage in certain enumerated "transactions." 29 U.S.C. § 1106(a)(1). *Spink* said nothing about whether § 1106(b)(1) requires such a transaction. And because Congress did not use the term "transaction" in § 1106(b)(1), *Spink* does not justify "a judicial override of" § 1106's "unambiguous text." *Bugielski*, 76 F.4th at 905.

Second, the district court relied on this Court's decision in *Wright*, discussed earlier, for the proposition that "it is clear that" § 1106(b) applies "only where there has been a qualifying 'transaction.'" (1-ER-18.) But the "qualifying transaction" required in *Wright* was just that the fiduciary actually "use" the plan's assets for its own benefit. *Wright* concerned the fiduciaries' decision "not to sell" plan assets. 360 F.3d at 1101. This Court reasoned that the decision "to *continue* to hold" the

---

[10] In *Spink*, the employer offered "increased pension benefits" in exchange for participants releasing "employment-related claims." 517 U.S. at 885. There was no contention that the employer used plan assets as a credit toward its contribution debt as Plaintiff alleges here.

assets did not "constitute a use of the Plan's assets" within the meaning of § 1106.[11] *Id.* (emphasis in original).

Under the district court's interpretation of § 1106(b)(1), notwithstanding the statute's plain language prohibiting all forms of self-dealing, fiduciaries *can* deal with the assets of a plan in their own interest and for their own account so long as their self-dealing is not in the form of a transaction with the plan. That interpretation cannot be correct because it would "allow[] some" forms of self-dealing "but not others" without a textual "basis in" § 1106(b)(1)'s "categorial bar." *Bugielski*, 76 F.4th at 905 (citation omitted).

## B.  HP Used the Plan's Assets in a Transactional Deal.

The district court also erred in concluding that "HP's conduct, as alleged by Plaintiff," does not constitute transactional dealing. (1-ER-18.) In determining that Plaintiff failed to allege a transaction, the district court reasoned that "section 1106 encompasses various

---

[11] That accords with this Circuit's precedents. *See Acosta*, 950 F.2d at 621 ("In order to state a claim for self-dealing under ERISA," a plaintiff must "demonstrate that" a fiduciary "actually used its power to deal with the assets of the plan for its own benefit or account."); *Friend*, 35 F.3d at 470 (finding no self-dealing where the fiduciary only "refused to renew" a line of credit and "did not use the assets of the Plans").

'commercial bargains that present a special risk of plan underfunding'
or 'involve uses of plan assets that are potentially harmful to the plan.'"
(1-ER-18 (quoting *Spink*, 517 U.S. at 893).) According to the district
court, "that type of factual scenario is not present" here because "the
plan assets were used to fulfill participants' benefits under the Plan,
and there was no apparent risk of Plan underfunding." (1-ER-18.)

However, one type of transaction expressly prohibited by § 1106 is
an "extension of credit between the plan and a party in interest." 29
U.S.C. § 1106(a)(1)(B). Construing the allegations in the light most
favorable to Plaintiff, *see Salas*, 116 F.4th at 845, they show that HP, a
"party in interest," orchestrated an extension of credit transaction with
the Plan.[12]

Forgiveness of an employer's contractual obligation to make
contributions to a plan constitutes an "extension of credit" between the
plan and employer. For example, in *Central States, Southeast and
Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559
(1985), the Supreme Court explained that § 1106(a)(1)(B) "requires that

---

[12] To be clear, Plaintiff is not alleging a violation of § 1106(a)(1)(B).
Plaintiff argues only that to the extent a transaction is required to state
a claim under § 1106(b)(1), he has alleged such a transaction.

47

a benefit plan prevent participant employers from gaining even
temporary use of assets to which the Plan is entitled, a requirement
that would certainly create a trustee responsibility for assuring full and
prompt collection of contributions owed to the Plan." *Id.* at 573 (citation
omitted). *See also Sprague v. Cent. States, Se. & Sw. Areas Pension
Fund*, 269 F.3d 811, 817–18 (7th Cir. 2001) (explaining that if an
employer "had an obligation to contribute to the Fund" and "the parties
agreed that the Fund would not collect the delinquent contributions, the
arrangement may be deemed a prohibited transaction").

Here, HP was obligated to make matching contributions "to the
Plan." (2-ER-107 (Plan Doc. § 5(d)); 2-ER-151 (Plan Doc. § 21(hh)).)
When it chose to reallocate forfeitures toward its matching contribution
debt, HP used assets *in* the Plan to satisfy its obligation to make
contributions *to* the Plan. As the district court correctly found, "[u]nder
the facts alleged in the First Amended Complaint, HP was deciding
whether to use forfeited funds to decrease matching contributions it
*already owed* under the prior year's Plan." (1-ER-12 n.1 (emphasis in
original).) By choosing to use forfeited funds to decrease owed matching
contributions, HP caused the Plan to extend it credit in violation of

48

§ 1106(a)(1)(B). *Sprague*, 269 F.3d at 817–18 (noting that a "transfer of plan assets" to satisfy an employer's "obligation to contribute to the Fund" would constitute an "extension of credit"). Accordingly, even if § 1106(b)(1) requires a transaction, the district court erred in concluding that Plaintiff failed to allege one.

## CONCLUSION

Plaintiff respectfully requests that this Court reverse the district court's order dismissing Plaintiff's breach of fiduciary duty and self-dealing claims, and remand to the district court with instructions to conduct further proceedings consistent with this Court's order.

Dated:  May 1, 2025

HAYES PAWLENKO LLP

By: *s/Kye D. Pawlenko*
Matthew B. Hayes
Kye D. Pawlenko
*Attorneys for Appellant*
*Paul Hutchins*

49

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

**9th Cir. Case Number 25-826**

The undersigned attorney or self-represented party states the following:

[X] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** *s/Kye D. Pawlenko*          **Date** May 1, 2025

50

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number 25-826**

I am the attorney or self-represented party.

**This brief contains 9,748 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1.

**Signature** *s/Kye D. Pawlenko*                    **Date** May 1, 2025

51