**No. 25-826**

# In the United States Court of Appeals
FOR THE NINTH CIRCUIT

PAUL HUTCHINS,

*Plaintiff-Appellant*,

v.

HP INC.,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of California
No. 23-cv-5875 (Honorable Beth Labson Freeman)

## BRIEF OF APPELLEE

DEBORAH S. DAVIDSON
MATTHEW A. RUSSELL
SAMUEL D. BLOCK
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Chicago, IL 60606
(312) 324-1000

MICHAEL E. KENNEALLY
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-3000

*Counsel for Defendant-Appellee HP Inc.*

# CORPORATE DISCLOSURE STATEMENT

HP Inc. has no parent company.  BlackRock, Inc. owns 10% or more of the stock of HP Inc.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ............................................................i

TABLE OF AUTHORITIES ..................................................................................iv

INTRODUCTION ..................................................................................................1

JURISDICTIONAL STATEMENT ........................................................................4

STATEMENT OF THE ISSUES.............................................................................4

STATEMENT OF THE CASE.................................................................................5

I.      Statutory background.....................................................................................5

II.     Factual background........................................................................................8

III.    Procedural background ................................................................................11

SUMMARY OF THE ARGUMENT .....................................................................14

ARGUMENT ........................................................................................................16

I.      The theory of this lawsuit contradicts long-established law on the use
        of amounts forfeited by unvested plan participants.......................................17

II.     None of Plaintiff's claims succeeds because HP was acting in a settlor
        capacity when it elected not to apply forfeitures to offset plan
        expenses........................................................................................................25

        A.      Each of Plaintiff's claims requires showing that HP was acting
                as a fiduciary, not a settlor, at the time it took the challenged
                action. ...............................................................................................25

        B.      Decisions about levels of benefits and levels of contributions
                are settlor decisions. .........................................................................28

        C.      The Plan reinforces that the challenged decisions were settlor
                decisions. ...........................................................................................34

III.    None of Plaintiff's claims succeeds even if HP was acting as a
        fiduciary when it made the challenged decisions. .........................................36

        A.      Plaintiff fails to adequately allege a breach of the duty of
                loyalty. ...............................................................................................38

        B.      Plaintiff fails to adequately allege a breach of the duty of
                prudence. ............................................................................................44

## TABLE OF CONTENTS
### (continued)

Page

    C.    Plaintiff fails to adequately allege a prohibited transaction.................46

CONCLUSION.........................................................................................................52

FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS...............................53

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aaron v. SEC*,
446 U.S. 680 (1980) ............................................................................................ 22

*Acosta v. Brain*,
910 F.3d 502 (9th Cir. 2018) ..........................................................27, 28, 31, 32

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004) .............................................................................................. 5

*Albertson's, Inc. v. Comm'r*,
42 F.3d 537 (9th Cir. 1994) ............................................................................... 18

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
137 F.4th 1015 (9th Cir. 2025) ............................................................16, 39, 44

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................16, 17, 41

*Barragan v. Honeywell Int'l Inc.*,
No. 24-cv-4529, 2024 WL 5165330 (D.N.J. Dec. 19, 2024) ......................24, 38

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................ 16

*Bozzini v. Ferguson Enters. LLC*,
No. 22-cv-5667, 2025 WL 1547617 (N.D. Cal. May 29, 2025) ........................ 24

*CFTC v. Schor*,
478 U.S. 833 (1986) ............................................................................................ 22

*Collins v. Pension & Ins. Comm. of S. Cal. Rock Prods. & Ready Mixed Concrete Ass'ns*,
144 F.3d 1279 (9th Cir. 1998) ........................................................37, 40, 43, 45

*Conkright v. Frommert*,
559 U.S. 506 (2010) .............................................................................................. 5

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Coulter v. Morgan Stanley & Co. Inc.*,
   753 F.3d 361 (2d Cir. 2014) ...............................................................30

*Cunningham v. Cornell Univ.*,
   145 S. Ct. 1020 (2025)................................................................49, 50

*Curtiss-Wright Corp. v. Schoonejongen*,
   514 U.S. 73 (1995)......................................................................28, 37

*Depot, Inc. v. Caring for Montanans, Inc.*,
   915 F.3d 643 (9th Cir. 2019) .............................................................16

*Dimou v. Thermo Fisher Sci. Inc.*,
   No. 23-cv-1732, 2024 WL 4508450 (S.D. Cal. Sept. 19, 2024) ........................24

*Doe v. Horne*,
   115 F.4th 1083 (9th Cir. 2024) ..........................................................51

*Dubin v. United States*,
   599 U.S. 110 (2023)..........................................................................49

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014)..........................................................5, 17, 44, 45

*Foltz v. U.S. News & World Rep., Inc.*,
   865 F.2d 364 (D.C. Cir. 1989)...........................................................39

*Friend v. Sanwa Bank Cal.*,
   35 F.3d 466 (9th Cir. 1994) ..................................................39, 41, 50

*Guyan Int'l, Inc. v. Pro. Benefits Adm'rs, Inc.*,
   689 F.3d 793 (6th Cir. 2012) .............................................................50

*Hughes Aircraft Co. v. Jacobson*,
   525 U.S. 432 (1999)....................................................................*passim*

*Hughes v. Nw. Univ.*,
   595 U.S. 170 (2022)....................................................................16, 45

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*IT Corp. v. Gen. Am. Life Ins. Co.*,
    107 F.3d 1415 (9th Cir. 1997) ............................................................33

*Lockheed Corp. v. Spink*,
    517 U.S. 882 (1996).....................................................................*passim*

*Loomis v. Exelon Corp.*,
    658 F.3d 667 (7th Cir. 2011) ......................................................29, 41

*Lucky Stores, Inc. & Subsidiaries v. Comm'r*,
    153 F.3d 964 (9th Cir. 1998) ..............................................................18

*Madrigal v. Kaiser Found. Health Plan, Inc.*,
    No. 24-cv-5191, 2025 WL 1299002 (C.D. Cal. May 2, 2025) ...................24, 48

*Mass. Laborers' Health & Welfare Fund v. Blue Cross Blue Shield of Mass.*,
    66 F.4th 307 (1st Cir. 2023)................................................................33

*McManus v. Clorox Co.*,
    No. 23-cv-5325, 2025 WL 732087 (N.D. Cal. Mar. 3, 2025)............................24

*McWashington v. Nordstrom, Inc.*,
    No. 24-cv-1230, 2025 WL 1736765 (W.D. Wash. June 23, 2025)............*passim*

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993).................................................................5, 6, 23

*Oracle Int'l Corp. v. Rimini Street, Inc.*,
    123 F.4th 986 (9th Cir. 2024) .............................................................49

*Parker Drilling Mgmt. Servs., Ltd. v. Newton*,
    587 U.S. 601 (2019)...........................................................................19

*Patelco Credit Union v. Sahni*,
    262 F.3d 897 (9th Cir. 2001) .............................................................50

*Pegram v. Herdrich*,
    530 U.S. 211 (2000)..................................................................6, 26, 27

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Perez-Cruet v. Qualcomm Inc.*,
No. 23-cv-1890, 2024 WL 2702207 (S.D. Cal. May 24, 2024)........................24

*Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*,
541 U.S. 1 (2004)................................................................................40

*Rodriguez v. Intuit Inc.*,
744 F. Supp. 3d 935 (N.D. Cal. 2024)..................................................24

*Santomenno v. Transamerica Life Ins. Co.*,
883 F.3d 833 (9th Cir. 2018) .................................................27, 32, 33

*Sievert v. Knight-Swift Transp. Holdings, Inc.*,
No. 24-cv-2443, 2025 WL 1248922 (D. Ariz. Apr. 30, 2025)....................24, 48

*Trs. of S. Cal. Bakery Drivers Sec. Fund v. Middleton*,
474 F.3d 642 (9th Cir. 2007) ...............................................................33

*US Airways, Inc. v. McCutchen*,
569 U.S. 88 (2013)...............................................................................36

*Varity Corp. v. Howe*,
516 U.S. 489 (1996)...............................................................................5

*Waller v. Blue Cross of Cal.*,
32 F.3d 1337 (9th Cir. 1994) ...............................................................33

*Whitman v. Am. Trucking Ass'ns*,
531 U.S. 457 (2001)..............................................................................23

*Wright v. JPMorgan Chase & Co.*,
No. 25-cv-525, 2025 WL 1683642 (C.D. Cal. June 13, 2025) ........23, 24, 45, 48

*Wright v. Or. Metallurgical Corp.*,
360 F.3d 1090 (9th Cir. 2004) ....................................................*passim*

**STATUTES**

28 U.S.C. § 1291 ....................................................................................4

## TABLE OF AUTHORITIES
### (continued)

Page(s)

28 U.S.C. § 1331 ....................................................................................................4

Employee Retirement Income Security Act
    29 U.S.C. § 1001 ..............................................................................................37
    29 U.S.C. § 1002 ......................................................................................*passim*
    29 U.S.C. § 1102 ................................................................................................5
    29 U.S.C. § 1103 .......................................................................................39, 40
    29 U.S.C. § 1104 ......................................................................................*passim*
    29 U.S.C. § 1106 ......................................................................................*passim*
    29 U.S.C. § 1109 ................................................................................................8
    29 U.S.C. § 1132 ..........................................................................................4, 8
    29 U.S.C. § 1144 ..............................................................................................20
    29 U.S.C. § 1204 ..............................................................................................18

Self-Employed Individuals Tax Retirement Act of 1962, Pub. L. No. 87-792, 76
    Stat. 809 ..........................................................................................................18

Tax Code
    26 U.S.C. § 401 ............................................................................18, 20, 21, 43

Tax Reform Act of 1986, Pub. L. No. 99-514, 100 Stat. 2085 ..........................20, 21

**RULES & REGULATIONS**

26 C.F.R.
    § 1.401-1 ..........................................................................................................19
    § 1.401-7 ....................................................................................................19, 22

29 C.F.R. § 2550.404a-5 ......................................................................................10

FED. R. APP. P. 4....................................................................................................4

FED. R. CIV. P. 12................................................................................................36

*Use of Forfeitures in Qualified Retirement Plans*, 88 Fed. Reg. 12282 (Feb. 27,
    2023) ................................................................................................................22

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

OTHER AUTHORITIES

BLACK'S LAW DICTIONARY (rev. 4th ed. 1968) ........................................................48

H.R. REP. NO. 99-841 (1986) (Conf. Rep.) ...............................................................21

MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/
dictionary/deal%20with .......................................................................................48

Rev. Rul. 71-313, 1971-2 C.B. 203 .........................................................................19

U.S. Dep't of Labor, *Understanding Retirement Plan Fees and Expenses* (Sept.
2021), https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/
resource-center/publications/retirement-plan-fees-expenses.pdf ........................9

WEBSTER'S NEW WORLD DICTIONARY (college ed. 1968) ......................................48

## INTRODUCTION

This case is part of a wave of recent lawsuits raising a novel theory under the Employee Retirement Income Security Act ("ERISA"). Unlike other ERISA class actions, Plaintiff does not allege that plan fiduciaries diminished retirees' benefits by offering poorly performing investments or allowing the plan to pay excessive fees to the plan's service providers. Nor does he claim that the terms of his plan promised benefits that participants did not receive—on the contrary, there is no dispute that Plaintiff and other participants received all benefits promised to them. Even so, Plaintiff seeks to impose additional obligations on Defendant HP Inc. ("HP") that are inconsistent with ERISA, Treasury regulations, Supreme Court and Ninth Circuit precedent, and the plan's terms.

Plaintiff's theory hinges on HP's use of plan "forfeitures." In many retirement plans, employees forfeit their right to unvested amounts that their employer has contributed to their plan accounts if they leave employment before those benefits vest. Consistent with longstanding Treasury regulations, the terms of HP's plan addressed forfeitures specifically and provided that HP could use them to provide benefits for other participants by offsetting the contributions that HP would otherwise make to provide those benefits. Alternatively, HP could use forfeitures to pay administrative expenses of the plan that participants would otherwise pay. Plaintiff did not incur a forfeiture personally. But he claims that because HP had a

1

choice between these uses of plan forfeitures, ERISA obligated it to pay plan expenses because that option was more beneficial to participants. Even though sponsors of ERISA plans have no obligation to pay plan expenses, and even though the plan here gives HP sole discretion over whether to subsidize plan expenses, Plaintiff says that ERISA makes HP's *option* to cover them a legal *duty* to do so.

After two rounds of briefing and oral arguments, the district court rejected this novel theory. Indeed, the overwhelming majority of courts to consider this theory have rejected it. This Court should, too.

For over sixty years, since before ERISA was enacted, federal law has allowed retirement plan sponsors to use forfeited plan assets to provide benefits to participants by offsetting employer contributions. That use of forfeited assets continued to be a lawful and common practice after ERISA's enactment, as Congress recognized in passing tax reform in 1986. If Congress had meant to restrict the common practice of using forfeitures to reduce contributions, ERISA would have said so. Or Congress would have amended the statute to restrict that practice during the decades since ERISA's enactment, when Congress observed employers continuing to use forfeitures this way. Instead, Congress has recognized—but has made no effort to restrict—the practice that this lawsuit seeks to prohibit. And federal regulators have affirmatively approved of this practice. For instance,

recently proposed regulations of the Department of the Treasury reaffirm that retirement plans may lawfully use forfeitures to reduce employer contributions.

Beyond seeking to upend a long-accepted practice, which Plaintiff labels "self-dealing," his theory also violates bedrock ERISA principles. ERISA regulates the administration and management of benefit plans, which involve actions taken in a fiduciary capacity akin to a common law trustee. But ERISA does not regulate an employer's decisions about what benefits to provide its employees or whether to pay the costs of plan administration itself, which are quintessential judgments of a trust settlor, not a trustee. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999). So, when HP made those decisions in this case, it was not acting in a fiduciary capacity and was not subject to ERISA's fiduciary obligations. And even if HP had been acting as a fiduciary rather than a settlor, Plaintiff's allegations do not plausibly plead a breach of any statutory obligation. ERISA simply does not obligate employers to maximize the amount of benefits they choose to provide employees. *See Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004). Nor does ERISA obligate an employer to relieve plan participants from having to pay plan expenses. The district court's judgment of dismissal was correct and should be affirmed.

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1) because Plaintiff asserts federal claims under 29 U.S.C. § 1132(a)(2). 1-ER-225 (Compl. ¶ 4). This Court has appellate jurisdiction under 28 U.S.C. § 1291 because the district court entered a final decision dismissing all claims as to all parties without leave to amend and entered final judgment in HP's favor. 1-ER-2. The Court entered its judgment on February 5, 2025, *id.*, and Plaintiff filed a timely notice of appeal on February 6, 2025. 2-ER-315; *see* FED. R. APP. P. 4(a)(1)(A).

## STATEMENT OF THE ISSUES

1.　　Whether Plaintiff failed to state an ERISA claim because he challenges decisions about the amount of benefits to provide employees or how to pay expenses associated with administering the plan, which are quintessential settlor decisions not governed by ERISA's fiduciary obligations.

2.　　Whether, assuming HP was acting as a fiduciary when making the challenged decisions, Plaintiff failed to plausibly allege that those decisions violated (a) ERISA's duty of loyalty, (b) ERISA's duty of prudence, or (c) ERISA's "self-dealing" prohibited-transaction provision.

## STATEMENT OF THE CASE

### I.    Statutory background

ERISA is "a comprehensive statute for the regulation of employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004).  The statute reflects a "careful balancing" of competing aims. *Conkright v. Frommert*, 559 U.S. 506, 517 (2010) (citation omitted).  On the one hand, Congress wanted employees to receive the benefits they had earned. *Id.* at 516.  But Congress did not require employers to offer employee benefits in the first place. *Id.*  So Congress took care to balance "fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 424 (2014) (citation omitted).  Courts must take account of both these aims in construing and applying the statute's duties and responsibilities. *See id.* at 424-25.

The statute requires that plans be established and maintained pursuant to a written instrument, often referred to as the plan document.  The plan document must "provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan."  29 U.S.C. § 1102(a)(1); *see also* 29 U.S.C. § 1102(a)(2).  ERISA subjects these fiduciaries to duties that are partly rooted in the common law of trusts. *See, e.g.*, *Varity Corp. v. Howe*, 516 U.S. 489, 496 (1996).  Even so, ERISA does not define a plan fiduciary "in terms of formal trusteeship." *Mertens v. Hewitt Assocs.*, 508 U.S.

248, 262 (1993). The statute generally defines "fiduciary" "in *functional* terms." *Id.*

Under that functional definition:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

Given ERISA's careful design and detailed provisions, including its functional definition of "fiduciary," the Supreme Court has cautioned that "the analogy between ERISA fiduciary and common law trustee [can be] problematic" if extended too far. *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000). Importantly, an ERISA fiduciary may lawfully "wear different hats" in a way that a common law trustee typically would not. *Id.* For instance, some employers sponsor plans and administer them. *Id.* To the extent an employer takes action in its capacity as a plan administrator, it wears its "fiduciary" hat and performs a fiduciary function. *Id.* at 225-26. Yet the employer wears a "plan sponsor[]" hat when it takes other, non-fiduciary actions, like "modifying the terms of a plan as allowed by ERISA to provide less generous benefits." *Id.* at 225. When employers act in their capacity

6

as plan sponsor in deciding what benefits to provide, they "do not act as fiduciaries" but rather "are analogous to the settlors of a trust." *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996); *see also Hughes Aircraft*, 525 U.S. at 444.

Decisions made while wearing a "fiduciary" hat are subject to ERISA's fiduciary duties. Those fiduciary duties include:

- ERISA's duty of loyalty, which requires fiduciaries to discharge their duties "solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries" and "defraying reasonable expenses of administering the plan," 29 U.S.C. § 1104(a)(1);

- ERISA's duty of prudence, which requires fiduciaries to "discharge [their] duties . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims," 29 U.S.C. § 1104(a)(1)(B); and

- ERISA's duty to follow plan terms, which requires fiduciaries to act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA]," 29 U.S.C. § 1104(a)(1)(D).

In addition to fiduciary duties, ERISA articulates a list of "prohibited transactions" that fiduciaries must not engage in. 29 U.S.C. § 1106. ERISA's fiduciary duties and duty to avoid prohibited transactions do not apply to actions an employer takes while wearing its "settlor" hat. *See Hughes Aircraft*, 525 U.S. at 443; *Lockheed*, 517 U.S. at 891.

ERISA creates a detailed enforcement scheme. As relevant here, fiduciaries are "personally liable to make good to [their] plan any losses to the plan" resulting from breaches of their statutory duties. 29 U.S.C. § 1109(a). Participants and beneficiaries have a cause of action to seek such relief on behalf of the plan. *See* 29 U.S.C. § 1132(a)(2).

## II. Factual background

The HP Inc. 401(k) Plan (the "Plan") is one way that HP and its affiliates help employees save for retirement. 2-ER-95.[1] The Plan is a defined contribution, individual account pension plan under ERISA. 2-ER-226 (Am. Compl. ¶ 6). In such a plan, a participant's benefit is not based on a specific formula, but rather on the assets in his or her individual account, including gains or losses. 2-ER-227 (Am. Compl. ¶ 13); *see* 29 U.S.C. § 1002(34). HP is the sponsor of the Plan. 2-ER-136 (Plan §§ 16(a), 21(k)). The Plan Committee is named Plan "administrator." *Id.*; *see* 2-ER-152 (Plan § 21(pp)).

The Plan helps employees save for retirement through two primary funding sources: (1) voluntary deferrals, withheld from a participant's wages; and (2) employer contributions, which HP pays in accordance with a matching percentage stated in the Plan. 2-ER-227 (Am. Compl. ¶¶ 14-15). Participants are

---

[1] The record materials cited in this background include Plaintiff's original and amended complaints and the Plan document, which the district court properly concluded was incorporated by reference into the complaints. 1-ER-7.

always fully vested in their own contributions. 2-ER-228 (Am. Compl. ¶ 17). HP's matching contributions, on the other hand, are subject to a three-year "cliff" vesting schedule so that a participant becomes 100% vested in employer contributions (and earnings) in his or her account if he or she stays employed for three years. 2-ER-228 (Am. Compl. ¶ 18). Participants whose employment ends before vesting forfeit any unvested employer contributions. 2-ER-228 (Am. Compl. ¶ 19); 2-ER-119 (Plan § 11(f)). The Plan expressly allows these forfeited amounts to be used "*to reduce employer contributions*, to restore benefits previously forfeited, to pay Plan expenses, or for any other permitted use." 2-ER-120 (Plan § 11(h)) (emphasis added); *see also* 2-ER-229 (Am. Compl. ¶ 23).

Operating a 401(k) plan gives rise to various expenses for services necessary to administer the plan, including recordkeeping, accounting, legal, trustee, and other administrative services. U.S. Dep't of Labor, *Understanding Retirement Plan Fees and Expenses* (Sept. 2021), https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/publications/retirement-plan-fees-expenses.pdf. An employer may volunteer to bear these expenses, in whole or in part, or may decide (as many do) to charge these expenses against the plan's assets and allocate them among its participants (either as a proportion of their individual account balance or as a flat fee). *Id.* Department of Labor regulations require a plan's

administrator to disclose any administrative fees that "may be charged against the individual accounts of participants." 29 C.F.R. § 2550.404a-5(c)(2).

Here, the Plan provides that Plan expenses "shall be charged to and paid out of the [Plan] pursuant to directions of the Company," which the Plan defines as HP. 2-ER-138, 2-ER-145 (Plan §§ 17(b), 21(k)). Plaintiff alleges that the Plan charges each participant's account a flat fee for recordkeeping services equal to $34 per year. 2-ER-228 (Am. Compl. ¶ 20). Plaintiff does not contend that $34 per participant per year is an unreasonable amount to pay for recordkeeping services.

Plaintiff is a participant in the Plan. 2-ER-225 (Am. Compl. ¶ 3). His amended complaint alleges that HP used Plan forfeitures to reduce employer contributions, as the Plan permits. 2-ER-230-31 (Am. Compl. ¶¶ 31-37). That is, Plaintiff claims that contributions HP made in prior years for participants who ultimately forfeited those amounts were "reallocated" to other participants' accounts, in lieu of new contributions HP would have credited to the same accounts. 2-ER-229 (Am. Compl. ¶¶ 22-23). Plaintiff alleges that ERISA required HP to use forfeitures to pay Plan expenses, even though charging such expenses to participants is both permitted and common. Plaintiff does not allege that he or any other Plan participant ever received lower contributions than the Plan promised. Rather, he claims that if HP had used forfeitures to pay Plan costs instead, the balance of his individual account would be higher because he would have received free (or highly

subsidized) administrative services paid for by HP, rather than having to pay his portion of those costs pursuant to the Plan terms.

## III. Procedural background

Plaintiff filed this action on November 14, 2023. 2-ER-295-314. HP and its initial co-Defendant, the Plan Committee, moved to dismiss the complaint for failure to state a claim. 2-ER-322. After briefing, the district court (Hon. Beth Labson Freeman) held extensive oral argument on the motion. 2-ER-241-93. The court granted the motion and dismissed the complaint with leave to amend and explained its reasoning in a written decision. 1-ER-20-39.

Plaintiff filed an amended complaint that dropped the Plan Committee as a Defendant and dropped several claims that pressed the same basic theory about forfeiture use. The amended complaint asserts three counts, all based on HP's use of Plan forfeitures. Plaintiff first claims HP breached ERISA's fiduciary duties of loyalty (Count I) and prudence (Count II). 2-ER-235-38 (Am. Compl. ¶¶ 44-57); *see* 29 U.S.C. § 1104(a)(1)(A)-(B). In addition, Plaintiff claims that using forfeitures as the Plan permits was a prohibited transaction under ERISA (Count III). 2-ER-238-39 (Am. Compl. ¶¶ 58-62). Plaintiff purports to represent a putative class of all Plan participants and beneficiaries from January 1, 2019, through the date of judgment. 2-ER-232 (Am. Compl. ¶ 40).

11

HP moved to dismiss the amended complaint. The district court again held extensive oral argument. 2-ER-41-83. Afterward, it issued another written decision granting the motion, this time without leave to amend. 1-ER-3-19.

The district court began by discussing two of HP's overarching arguments against the legal sufficiency of the claims. First, HP contended that deciding whether to subsidize administrative expenses in a given year does not implicate ERISA's fiduciary duties or prohibition on certain classes of impermissible transactions because it is not a decision HP makes as a fiduciary of the Plan. The district court recognized that under Supreme Court precedent, decisions about who is entitled to receive benefits and in what amounts, and who should pay the costs for administering the plan, are matters of plan design not made in a fiduciary capacity. 1-ER-10 (citing *Hughes Aircraft*, 525 U.S. at 444). Next, the district court acknowledged that "Plaintiff's theory seems to ignore 'decades of settled law'" permitting the use of forfeitures to reduce employer contributions. *Id.* The breadth of Plaintiff's theory meant that every time HP chose whether to pay administrative costs or reduce employer contributions, the only lawful choice would be to pay administrative costs. 1-ER-11. This result would "stretch the fiduciary duties of loyalty and prudence beyond the law and ... create benefits beyond what was promised in the Plan itself." *Id.*

12

The district court then turned to the three counts in the amended complaint. As for the duty of loyalty (Count I), the court explained that ERISA does not obligate fiduciaries to maximize benefits. 1-ER-12. Plaintiff asserted that HP had a conflict of interest in administering the Plan's forfeiture provision merely because applying forfeitures toward contributions effectively lowered HP's cost of providing benefits. 1-ER-11-12. But this theory ignored that the mere possibility of a conflict of interest is not enough to make a duty of loyalty claim plausible, as opposed to merely speculative, especially when HP was complying with the Plan's terms and using forfeitures to "provid[e] benefits to participants and their beneficiaries." 1-ER-13 (quoting 29 U.S.C. § 1104(a)(1)(A)(i)). As for the duty of prudence (Count II), Plaintiff's theory again swept too broadly given Supreme Court instructions to apply the duty of prudence in a context-sensitive way that considers the defendant's particular circumstances. 1-ER-15. Plaintiff's view amounted to a categorical rule that "forfeitures must always be used to pay Plan participants' administrative expenses before they can be allocated to reducing a company's matching contributions" (unless the employer is at risk on defaulting on its contributions). 1-ER-16. That left the prohibited-transaction claim (Count III). Although Plaintiff insisted that a prohibited-transaction claim under 29 U.S.C. § 1106(b) does not require a transaction, the district court found that argument inconsistent with Supreme Court and Ninth Circuit precedent. 1-ER-18. Using plan assets to pay plan

13

benefits is not a "transaction," much less a prohibited one, so this claim failed too. *Id.*

## SUMMARY OF THE ARGUMENT

I.     The district court was rightly concerned that Plaintiff's claims contravene decades of settled law and practice that countenance using forfeitures to reduce employer contributions.   Before ERISA was enacted, it was clearly understood, based on a Treasury Department regulation, that employers could use forfeitures for that purpose.  That understanding remained undisturbed twelve years after ERISA was enacted when Congress—in enacting major tax reform and amending ERISA—recognized with approval that forfeitures could lawfully be used to reduce employer contributions.  And just before Plaintiff filed this lawsuit, the Treasury Department proposed a new regulation again recognizing the permissibility of using forfeitures to reduce contributions.   If Plaintiff's view of ERISA were correct, it is incredible that nobody noticed until now.

II.     Plaintiff's view of ERISA is not correct.  The first problem is that Plaintiff is complaining about a decision about how generously to fund employee benefits—whether the employer should pay more out of pocket so that participants need not pay out of their accounts for the plan's expenses. But it is firmly settled that ERISA does not regulate employers' decisions about what amount of benefits to offer employees, nor does ERISA require employers to pay for plan expenses.  If

14

HP wanted to, Plaintiff apparently concedes, it could write the Plan so that assets in participants' individual accounts are always used to pay plan expenses, and forfeitures never are. And that is one predictable result if lawsuits like this one are allowed to proceed. Or, alternatively, employers might refrain from providing matching contributions to ensure they have control over their costs. Neither result serves any purpose of ERISA. Nothing in the statute supports tying employers' hands so that they cannot choose in a given year to provide an extra benefit and cover expenses. In any event, making that decision about whether to cover participant expenses is a quintessential question of plan design and funding left to the sponsor's discretion as settlor; it is not subject to ERISA's fiduciary obligations. Because HP is not acting as a fiduciary when it makes that decision, none of Plaintiff's claims can succeed.

III. Even if HP's challenged action were fiduciary in nature, Plaintiff has not plausibly alleged any breach of ERISA. Plaintiff's theory is that plan sponsors must always choose to cover expenses rather than reduce contributions except in the rarest of circumstances. This extreme rule does not fit within ERISA's fiduciary duties of loyalty and prudence, which do not obligate employers to maximize employees' amount of benefits. Nor do those duties set forth categorical obligations like the one Plaintiff hypothesizes. They derive their content from the specific circumstances in which the fiduciary must make decisions for the Plan. Plaintiff's

15

lawsuit improperly turns these fiduciary duties into a blunt object rather than the context-dependent guideposts that Congress created them to be. Similarly, Plaintiff's lawsuit distorts ERISA's prohibited-transaction provision by attempting to impose liability without any "transaction" at all. Because neither HP nor the Plan engaged in a transaction when forfeited assets remained within the Plan to fund benefits for participants, no prohibited transaction occurred.

## ARGUMENT

Like other civil claims, ERISA claims are assessed under "the pleading standard discussed in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)." *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022). ERISA plaintiffs must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015, 1020 (9th Cir. 2025) (citation and quotation marks omitted). Although the Court "accept[s] as true all factual allegations," it does not "accept as true allegations that are conclusory." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 653 (9th Cir. 2019) (citation omitted). The complaint must include "well-pleaded facts [that] permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If, instead, the complaint "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between

16

possibility and plausibility of entitlement to relief." *Id.* at 678 (citation and quotation marks omitted).

The Supreme Court has stressed that a motion to dismiss is an "important mechanism for weeding out meritless claims" in ERISA class actions. *Dudenhoeffer*, 573 U.S. at 425. To appropriately separate the "plausible sheep from the meritless goats," courts must give "careful, context-sensitive" consideration to the complaint's allegations. *Id.* at 425-26. A "context-specific task" of this nature "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. As the district court held, Plaintiff's complaint fails under these standards.

## I.     The theory of this lawsuit contradicts long-established law on the use of amounts forfeited by unvested plan participants.

Since before ERISA was enacted, Treasury regulations have expressly permitted (and in some instances mandated) applying forfeitures toward ongoing employer contributions.     When Congress revamped the Tax Code and simultaneously made various changes to ERISA in 1986, it acknowledged the lawfulness of this use of forfeitures and made no attempt to restrict it. And just two years ago, the Treasury Department proposed a new regulation that again provides express authorization for plans to use forfeitures to reduce employer contributions. Plaintiff's claims thus contradict longstanding law and practice. His arguments

come nowhere near establishing that unbeknownst to everyone, ERISA has restricted this widespread practice all along.

Pension plans fall within the regulatory authority of both the Department of Labor and the Department of the Treasury. In fact, ERISA requires those departments to coordinate when enforcing statutes relating to the same subject matter. 29 U.S.C. § 1204(a). Pension plans relate to employee benefits, of course, but they also affect the government's collection of revenue. Generally speaking, employers may take a tax deduction for their contributions to qualified pension plans. *See, e.g.*, *Lucky Stores, Inc. & Subsidiaries v. Comm'r*, 153 F.3d 964, 965 (9th Cir. 1998); *Albertson's, Inc. v. Comm'r*, 42 F.3d 537, 543 (9th Cir. 1994). In simplified terms, then, the more deductible contributions employers make, the less they pay in taxes. The Internal Revenue Code and Treasury Department therefore put many restrictions on qualified pension plans, such as by generally requiring that qualified plans be funded through a trust. *See Albertson's*, 42 F.3d at 541-42.

In 1962, Congress added Section 401(a)(8) to the Tax Code, which stated, "A trust forming part of a pension plan shall not constitute a qualified trust under this section unless the plan provides that forfeitures must not be applied to increase the benefits any employee would otherwise receive under the plan." Self-Employed Individuals Tax Retirement Act of 1962, Pub. L. No. 87-792, § 2(2), 76 Stat. 809, 810. Without this restriction, employers would have been able to continue making

18

tax-deductible contributions to a plan even though such contributions were unnecessary to properly fund the benefits that the plan promised. The Treasury Department implemented this restriction in a regulation the following year:

> In the case of a trust forming a part of a qualified pension plan, **the plan must expressly provide that forfeitures** arising from severance of employment, death, or for any other reason, **must not be applied to increase the benefits any employee would otherwise receive** under the plan at any time prior to the termination of the plan or the complete discontinuance of employer contributions thereunder. **The amounts so forfeited must be used as soon as possible to reduce the employer's contributions under the plan.** However, a qualified pension plan may anticipate the effect of forfeitures in determining the costs under the plan. . . .

26 C.F.R. § 1.401-7(a) (emphasis added). The regulation's prohibition against increasing benefits was primarily concerned with defined benefit plans, whose benefits must be "definitely determinable" under a predetermined formula. *See* 26 C.F.R. § 1.401-1(b)(1)(i). But the Treasury Department made clear that other types of plans, including stock bonus plans like HP's Plan, *see* 2-ER-95, were permitted to use forfeitures to use forfeitures to reduce later contributions. Rev. Rul. 71-313, 1971-2 C.B. 203 ("[S]tock bonus plans may provide that forfeitures be used to reduce employer contributions that otherwise would be required under the contribution formula contained in the plan.").

"It is a commonplace of statutory interpretation that 'Congress legislates against the backdrop of existing law.'" *Parker Drilling Mgmt. Servs., Ltd. v.*

19

*Newton*, 587 U.S. 601, 611 (2019) (citation omitted). So, when Congress enacted ERISA in 1974, it would have taken clear action had it intended to curtail the permission that employers had under preexisting law to use forfeitures to reduce contributions. Congress would not have silently restricted employers' ability to use forfeitures as tax law had authorized them to do. Indeed, Congress specified that "[n]othing in [ERISA's subchapter I] shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States . . . or any rule or regulation issued under any such law." 29 U.S.C. § 1144(d). Yet that is ultimately what Plaintiff hypothesizes—that several general provisions in ERISA subchapter I, without even mentioning forfeitures, implicitly altered the express permission that plan sponsors had under the Tax Code and regulations to use forfeitures to reduce contributions.

Legislation after 1974 confirms that ERISA did not work that major change to the law. In 1986, Congress reformed the Tax Code and amended ERISA in multiple ways. *See* Tax Reform Act of 1986, Pub. L. No. 99-514, 100 Stat. 2085. One of the changes was to Section 401(a)(8) in the Tax Code. § 1119, 100 Stat. at 2463. Originally, as noted above, that provision prohibited trusts forming part of a "pension plan" from using forfeitures to increase the benefits that employees would otherwise receive. In 1986, Congress replaced the phrase "pension plan" with the phrase "defined benefit plan." The legislative history for this provision notes that

20

under then-existing law, certain types of defined contribution plans (including stock bonus plans) could use forfeitures "to reduce future employer contributions or to offset administrative expenses," among other options. H.R. REP. NO. 99-841, at II-442 (1986) (Conf. Rep.). The new legislation sought to "create[] uniform rules for forfeitures under any defined contribution plan." *Id.* Going forward, "forfeitures arising in any defined contribution plan . . . [could] be either (1) reallocated to the accounts of other participants in a nondiscriminatory fashion, or (2) used to reduce future employer contributions or administrative costs." *Id.*

Thus, Congress's understanding in 1986, just twelve years after ERISA's enactment, was that defined contribution plans like the Plan here could use forfeitures to reduce employer contributions. There is no hint that anyone thought ERISA had restricted that option. Nor was there any effort to change ERISA to do so, even though the 1986 legislation changed numerous other aspects of ERISA. *See, e.g.*, Tax Reform Act of 1986, Pub. L. No. 99-514, §§ 1139(c), 1145(b), 1852(i), 1879(u)(1), 1898(a)(4)(B), 100 Stat. 2085, 2487, 2491, 2869, 2913, 2944. On the contrary, in amending Section 401(a)(8), Congress purposefully sought to clarify that all defined contribution plans could use forfeitures in any of the three ways—reallocating them to other participants, paying plan expenses, *or* reducing future employer contributions. H.R. REP. NO. 99-841, at II-442 (1986) (Conf. Rep.). "Where, as here, 'Congress has not just kept its silence by refusing to overturn the

21

administrative construction, but has ratified it with positive legislation,' [courts] cannot but deem that construction virtually conclusive." *CFTC v. Schor*, 478 U.S. 833, 846 (1986); *Aaron v. SEC*, 446 U.S. 680, 718 n.9 (1980) ("[T]he views of a subsequent Congress are entitled to some weight, particularly when that Congress undertakes significant revision of the statute but leaves the disputed provision intact.").

Nothing has changed since 1986 to support an inference now that ERISA actually does constrain the use of forfeitures to reduce employers' contributions. Just the opposite, the Treasury Department proposed a new rule on forfeiture use right before Plaintiff filed this lawsuit, and this proposed rule recounted the history above and sought to codify the practice of the prior sixty years. *Use of Forfeitures in Qualified Retirement Plans*, 88 Fed. Reg. 12282 (Feb. 27, 2023). To that end, the Department proposed a new Section 1.401-7(a) to clarify permitted use of forfeitures in defined contribution plans. Under the proposal, a defined contribution plan must specify that forfeitures "will be used for one or more of the following purposes: (i) [t]o pay plan expenses; (ii) [t]o reduce employer contributions under the plan; or (iii) [t]o increase benefits to other participants' accounts in accordance with plan terms." *Id.* at 12285.

The district court appreciated that this proposed regulation is not binding law and would not apply to some of the years at issue here in any event. 1-ER-10; 1-

22

ER-25. But even so, "the proposed rule helps to illustrate the difficulty with Plaintiff's theory: Plaintiff effectively asserts that the general fiduciary duty provision of ERISA abrogates these long-settled rules regarding the use of forfeitures in defined contribution plans." 1-ER-10-11. That is not how statutes work. Congress does not "hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). Particularly not in ERISA. ERISA is "a 'comprehensive and reticulated statute,' the product of a decade of congressional study of the Nation's private employee benefit system." *Mertens*, 508 U.S. at 251 (citation omitted). This "enormously complex and detailed statute . . . resolved innumerable disputes between powerful competing interests—not all in favor of potential plaintiffs." *Id.* at 262. ERISA's "carefully crafted and detailed enforcement scheme provides 'strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" *Id.* at 254.

Thus, if ERISA restricted plans' ability to use forfeitures to reduce employers' contributions contrary to longstanding practice, ERISA would say so. And it would not have taken fifty years for anyone to notice. That helps explain why the vast majority of courts to consider the question have agreed with the district court below: ERISA does not impose the obligations that Plaintiff claims. *See, e.g.*, *McWashington v. Nordstrom, Inc.*, No. 24-cv-1230, 2025 WL 1736765, at *12-16 (W.D. Wash. June 23, 2025); *Wright v. JPMorgan Chase & Co.*, No. 25-cv-525,

23

2025 WL 1683642, at *3-7 (C.D. Cal. June 13, 2025); *Bozzini v. Ferguson Enters. LLC*, No. 22-cv-5667, 2025 WL 1547617, at *2 (N.D. Cal. May 29, 2025); *Madrigal v. Kaiser Found. Health Plan, Inc.*, No. 24-cv-5191, 2025 WL 1299002, at *4-7 (C.D. Cal. May 2, 2025); *Sievert v. Knight-Swift Transp. Holdings, Inc.*, No. 24-cv-2443, 2025 WL 1248922, at *3 (D. Ariz. Apr. 30, 2025); *Dimou v. Thermo Fisher Sci. Inc.*, No. 23-cv-1732, 2024 WL 4508450, at *8-11 (S.D. Cal. Sept. 19, 2024); *Barragan v. Honeywell Int'l Inc.*, No. 24-cv-4529, 2024 WL 5165330, at *4-7 (D.N.J. Dec. 19, 2024). Accepting Plaintiff's theory would "contravene decades of federal regulations suggesting that such a decision is entirely permissible." *Sievert*, 2025 WL 1248922, at *4.[2]

As detailed in the next two sections, Plaintiff's allegations here fail to state a claim for two core reasons. First, Plaintiff cannot establish that HP was acting as a

---

[2] Although the vast majority of courts in this recent wave of forfeitures litigation have agreed with Judge Freeman's decision in dismissing other forfeiture complaints, Plaintiff places heavy weight on the following three cases: *Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935 (N.D. Cal. 2024); *Perez-Cruet v. Qualcomm Inc.*, No. 23-cv-1890, 2024 WL 2702207 (S.D. Cal. May 24, 2024); *McManus v. Clorox Co.*, No. 23-cv-5325, 2025 WL 732087 (N.D. Cal. Mar. 3, 2025). Two of these cases are off point because the plaintiffs there "plausibly alleged that the Plan did not authorize the specific decisions made by [the defendant]." *Rodriguez*, 744 F. Supp. 3d at 944; *Wright*, 2025 WL 1683642, at *5 (distinguishing *Rodriguez* and *Perez-Cruet* on this ground); *see also* 1-ER-13. Moreover, to the extent these cases also follow broader reasoning, they are outliers and are unpersuasive for the reasons identified in this brief. *See, e.g.*, *Sievert*, 2025 WL 1248922, at *4 (stating that the court was more persuaded by Judge Freeman's decision in this case than the *McManus* decision); *McWashington*, 2025 WL 1736765, at *15 n.28 (same, as to *Perez-Cruet*).

fiduciary when it decided to apply forfeitures not to fund plan expenses but to reduce employer contributions. Second, the allegations show no plausible breach of the duty of loyalty, the duty of prudence, or ERISA's prohibited transactions provision.

## II. None of Plaintiff's claims succeeds because HP was acting in a settlor capacity when it elected not to apply forfeitures to offset plan expenses.

### A. Each of Plaintiff's claims requires showing that HP was acting as a fiduciary, not a settlor, at the time it took the challenged action.

Plaintiff's amended complaint raises three claims: (1) breach of the fiduciary duty of loyalty under 29 U.S.C. § 1104(a)(1)(A); (2) breach of the fiduciary duty of prudence under 29 U.S.C. § 1104(a)(1)(B); and (3) prohibited transactions or "self-dealing" under 29 U.S.C. § 1106(b)(1). To succeed on any of these claims, Plaintiff must show that HP took the challenged action in a fiduciary capacity, which he cannot show.

The statute is clear that all three claims apply only to fiduciary decisions. Both of the fiduciary duties (loyalty and prudence) are directed to fiduciaries: "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and[] (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan" and "(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of

a like character and with like aims." 29 U.S.C. § 1104(a)(1)(A)-(B). The prohibited-transaction provision similarly focuses on fiduciaries: "A fiduciary with respect to a plan shall not . . . deal with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1). So if a plaintiff fails to adequately allege the defendant's fiduciary status, fiduciary duty and prohibited transaction claims fail at the pleading stage. *See, e.g.*, *Lockheed*, 517 U.S. at 892 (explaining that fiduciary-duty and prohibited-transaction claims both require a finding of fiduciary status); *Wright*, 360 F.3d at 1101-02 (affirming dismissal of prohibited-transaction and fiduciary-duty claims because, among other things, the defendant was not a fiduciary).

And, importantly, it is not enough to allege that the defendant sometimes acted as a fiduciary. The defendant must be acting as a fiduciary at the time of the challenged decision. While ERISA fiduciaries are somewhat analogous to common-law trustees, "the analogy between ERISA fiduciary and common law trustee becomes problematic" if stretched too far. *Pegram*, 530 U.S. at 225. "[T]he trustee at common law characteristically wears only his fiduciary hat when he takes action to affect a beneficiary, whereas the trustee under ERISA may wear different hats." *Id.* Sometimes, an ERISA "fiduciary may take actions to the disadvantage of employee beneficiaries, when they act as employers (*e.g.*, firing a beneficiary for reasons unrelated to the ERISA plan), or even as plan sponsors (*e.g.*, modifying the

26

terms of a plan as allowed by ERISA to provide less generous benefits)." *Id.* ERISA allows entities to wear different hats, although it requires "that the fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions." *Id.* For this reason, "the statute does not describe fiduciaries simply as the administrators of the plan." *Id.* Rather, "it defines an administrator . . . as a fiduciary only 'to the extent' that he acts in such a capacity in relation to a plan." *Id.* at 225-26 (quoting 29 U.S.C. § 1002(21)(A)).

For ERISA claims, then, the threshold question is not whether a person who administers the plan "adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to the complaint." *Id.* at 226; *accord Acosta v. Brain*, 910 F.3d 502, 517-18 (9th Cir. 2018).

Plaintiff does not dispute this point. He admits here that "the central inquiry is whether the party was acting as an ERISA fiduciary 'when taking the action subject to complaint.'" Pl. Br. 15 (quoting *Santomenno v. Transamerica Life Ins. Co.*, 883 F.3d 833, 838 (9th Cir. 2018)). And by his characterization, the complained-of action is HP's annual decision to use forfeitures to reduce employer contributions rather than defray the Plan's expenses. *Id.*

As a result, the threshold question for each of Plaintiff's claims is whether HP was wearing a "fiduciary" hat, or a "settlor" hat, when it decided how to use

27

forfeitures each year. As this Court has underscored, "[t]his threshold 'two-hats' inquiry is important '[b]ecause virtually every business decision an employer makes can have an adverse impact on an employee benefit plan.'" *Acosta*, 910 F.3d at 518 (citation omitted). Even when the challenged decisions "personally benefitted the employer," "[c]ourts must 'examine the conduct at issue to determine whether it constitutes management or administration of the plan, giving rise to fiduciary concerns, or merely a business decision that has an effect on an ERISA plan not subject to fiduciary duties.'" *Id.* (citation omitted).

As discussed next, deciding whether to give participants an extra benefit of subsidized plan expenses is a quintessential settlor function that does not implicate fiduciary duties.

## B. Decisions about levels of benefits and levels of contributions are settlor decisions.

The Supreme Court has often stressed that "[n]othing in ERISA requires employers to establish employee benefit plans" or "mandate[s] what kind of benefits employers must provide if they choose to have such a plan." *Lockheed*, 517 U.S. at 887. In fact, "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate [their benefit] plans." *Id.* at 890 (quoting *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995), and extending its rule to pension benefit plans). And "[w]hen employers undertake those

28

actions, they do not act as fiduciaries, but are analogous to the settlors of a trust." *Id.* (citation omitted).

Although this point often arises in the context of formal plan amendments, it is not limited to that context. A common thread within the non-fiduciary category of settlor-like actions is making "a decision regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated." *Hughes Aircraft*, 525 U.S. at 444.

The Second and Seventh Circuits have therefore recognized that decisions about how much to contribute to a plan or whether to cover plan expenses are settlor decisions that do not implicate ERISA's fiduciary obligations. For example, in rejecting claims that an employer "should have paid [plan] expenses directly" and should have "contribute[d] more to the Plan," the Seventh Circuit cited *Hughes Aircraft* and *Lockheed* and explained that "whether to cover these expenses is a question of plan design, not of administration." *Loomis v. Exelon Corp.*, 658 F.3d 667, 671 (7th Cir. 2011), *abrogated in part on other grounds by Hughes v. Nw. Univ.*, 595 U.S. 170 (2022). "ERISA does not create any fiduciary duty requiring employers to make pension plans more valuable to participants." *Id.* And thus "[w]hen deciding how much to contribute to a plan, employers may act in their own interests." *Id.* Similarly, the Second Circuit has recognized that "settlor" functions "include conduct such as establishing, funding, amending, or terminating a plan"

29

and "decisions relating to the timing and amount of contributions." *Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 367 (2d Cir. 2014) (per curiam) (citation omitted).

Plaintiff's discussion of HP's purported fiduciary status does not identify any case holding that the category of fiduciary actions includes decisions over whether participants should be excused from paying expenses or whether the employer should make higher contributions so that participants can have that benefit. Pl. Br. 15-17. Plaintiff cites the district court's first opinion below, 1-ER-27, but the district court's second opinion clarified that earlier discussion, 1-ER-9. In its second opinion, the district court cited *Hughes Aircraft* to conclude that "HP *acting as settlor* determines whether, in a given year, Plan expenses will be paid by HP or charged to Plan participants' accounts." 1-ER-10. This clarification properly recognizes that the precise action Plaintiff complains about—a decision whether to pay plan expenses in a particular year—is a settlor decision.

Plaintiff does not really dispute that a decision to use forfeitures to reduce contributions can be a settlor decision. He seems to concede that if HP changed the Plan so that forfeitures *always* reduce future contributions, and *never* pay for expenses, such a change would not violate any fiduciary duty. *See* Pl. Br. 30 n.5, 36. And in briefing below, he eventually abandoned any argument "that it is impermissible to use forfeitures for the purpose of reducing employer

30

contributions." SER-26. His theory seems to be that by retaining an option under the Plan document to apply forfeitures toward Plan expenses, HP effectively lost the ability to do anything else. Pl. Br. 36.

That theory does not withstand scrutiny. If a decision to always use forfeitures to reduce contributions is an act taken wearing a "settlor" hat, a decision to use forfeitures to reduce contributions solely for one year must be taken wearing a "settlor" hat, too. After all, nothing would stop a sponsor from amending a plan every year to dictate whether in that year forfeitures would go toward expenses or contributions. *See Lockheed*, 517 U.S. at 890 (explaining that ERISA generally allows employers to modify plans "for any reason at any time"). If Plaintiff is suggesting that HP may accomplish this result only by formally amending its Plan every year, his view elevates form over substance. Such a view cannot be correct because "ERISA's definition of 'fiduciary' is functional rather than formal." *Acosta*, 910 F.3d at 518 (citation omitted).

Worse yet, Plaintiff's view would create perverse incentives that promote no conceivable purpose of ERISA. The upshot of Plaintiff's view is that employers who are not willing to commit to always using forfeitures to pay expenses should commit to never using forfeitures to benefit plan participants in that way. He concedes that employers need not design their plans to make forfeited amounts

31

available to pay plan expenses. Pl. Br. 34. It is impossible to see why Congress would have intended that result, and Plaintiff never offers any explanation.

Plaintiff argues that a year-by-year decision on whether to pay plan expenses or reduce contributions triggers ERISA's fiduciary definition for two reasons. First, he says, the decision is an exercise of authority or control respecting management or disposition of plan assets. Pl. Br. 15. Second, he characterizes HP's annual decision as "discretionary authority or discretionary responsibility in [plan] administration." Pl. Br. 16. Each suggestion, however, uses the terms "'management and administration' loosely," *Acosta*, 910 F.3d at 519, and not in the way those terms are used in 29 U.S.C. § 1002(21)(A)(i) and (iii). In *Santomenno*, for example, this Court held that "[a] service provider is plainly not involved in plan management when negotiating its prospective fees." 883 F.3d at 838. Similarly, here, HP is not involved in plan management when deciding whether to subsidize Plan administrative expenses. Nor is HP exercising control over the disposition of Plan assets when it decides to use them to reduce contributions. The forfeitures continue to remain Plan assets and are simply distributed among various participants' individual accounts in accordance with the contribution criteria specified in the Plan terms. By contrast, in *Santomenno*, unlike this case, the service provider actually withdrew predetermined fees from the plan's assets; and yet this Court still decided that this action was not an exercise of control over the disposition of plan assets

32

except in the "hollowest sense." 883 F.3d at 838, 841. An actual example of control over management or disposition of plan assets would be exercising the power to deplete plan assets by writing checks from the plan's bank account, *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1421 (9th Cir. 1997), or putting plan assets into a distinct fund that the fiduciary has authority to spend, *Trs. of S. Cal. Bakery Drivers Sec. Fund v. Middleton*, 474 F.3d 642, 646 (9th Cir. 2007). But deciding to keep forfeited assets within the plan to fund other participants' benefits does not bear any resemblance to such actions.

Equally unsupportive of Plaintiff's position is *Massachusetts Laborers' Health & Welfare Fund v. Blue Cross Blue Shield of Massachusetts*, 66 F.4th 307, 318 (1st Cir. 2023). That case explores the difference between discretionary and ministerial actions and concluded that the defendant there lacked discretion in the actions at issue. *Id.* at 318-19. Under 29 U.S.C. § 1002(21)(A)(i) and (iii), however, "only discretionary acts *of plan ... management* trigger fiduciary duties." *Santomenno*, 883 F.3d at 838 (citation omitted). Acts of plan management unquestionably include choosing among providers for a plan. *See, e.g.*, *Waller v. Blue Cross of Cal.*, 32 F.3d 1337, 1342-43 (9th Cir. 1994). But deciding whether to cover expenses for plan participants is not an act of plan management. That remains true whether that decision occurs once a year or only when the plan document is first drafted.

33

**C.     The Plan reinforces that the challenged decisions were settlor decisions.**

The district court rightly noted that the Plan document itself reflects the settlor nature of the action Plaintiff challenges.  1-ER-10-11.  This reasoning provides an alternative path to the same conclusion that HP was not acting as a fiduciary when it made the challenged decisions.

The Plan designates HP (or the "Company") as the "'sponsor' of the Plan." 2-ER-136 (Plan § 16(a)).  As the "named fiduciary with respect to operation and administration," or "the plan administrator," the Plan designates the Plan Committee.  *Id.*  The Plan Committee, which was named as a Defendant in the original complaint but dropped as a Defendant in the amended complaint, has no authority to decide how to pay Plan expenses.  Rather, the Plan Document expressly gives "the Company" that authority:

> The reasonable expenses of administering the Plan and Trust shall be charged to and paid out of the Trust **pursuant to directions of the Company** and as may be provided in the Trust Agreement, to the extent permitted by applicable law, unless in the Company's discretion they are paid by the Participating Companies.  **The Company shall have complete and unfettered discretion to determine whether an expense of the Plan or Trust shall be paid by the Participating Companies or out of the Trust Fund** . . . .  The Company's discretion and authority to direct the Trust Fund to pay any reasonable expenses of the Plan and Trust shall not be limited in any way by any prior decision or act, whether repeated or sporadic, by the Company and other Participating

34

> Companies to pay any or all expenses of the Plan and
> Trust.

2-ER-138 (Plan § 17(b)) (emphasis added). Thus, the Plan reflects that "HP *acting as settlor* determines whether, in a given year, Plan expenses will be paid by HP or charged to Plan participants' accounts." 1-ER-10. So regardless of whether the implementation of that determination is also a settlor function, the actual determination that Plaintiff challenges through this lawsuit is itself a settlor function. *See id.*

Plaintiff responds that Section 17(b) is irrelevant because the Plan can pay expenses out of Plan assets regardless of whether it uses forfeitures or amounts in participants' accounts. Pl. Br. 34. This response misses the important point, which is that HP has complete discretion over whether to subsidize Plan administrative expenses. On Plaintiff's view, however, that discretion disappears. Having to use forfeitures to pay Plan expenses would have the same effect as requiring HP to pay the expenses. If forfeitures must be redirected from contributions to expenses, HP will have to pay more to make up the contributions gap. Plaintiff fully admits that HP's costs increase if forfeitures are used to pay expenses. *See* Pl. Br. 21.

Such a compelled subsidy is what Section 17(b) was written to avoid. That provision places it within HP's "complete and unfettered discretion to determine whether an expense of the Plan or Trust shall be paid by the Participating

35

Companies." 2-ER-138 (Plan § 17(b)). Plaintiff's position makes that provision a nullity.

*    *    *

Neither appellate authority, the text and purposes of ERISA, nor the Plan document support Plaintiff's premise that the decisions he challenges were taken by HP in a fiduciary capacity. The Plan document names HP as the Plan's sponsor, and HP never took off its "settlor" hat in engaging in any of the actions challenged in the complaint. Because this point is fatal to each of Plaintiff's claims, the Court can affirm dismissal without going further. *See, e.g.*, *Wright*, 360 F.3d at 1102 (collecting Supreme Court cases that "affirmed Rule 12(b)(6) dismissals of ERISA claims on the ground that the conduct of the defendant was not that of a 'fiduciary,' but rather a 'settlor'").

## III. None of Plaintiff's claims succeeds even if HP was acting as a fiduciary when it made the challenged decisions.

Even if one accepts Plaintiff's premise that HP was acting as a fiduciary in deciding not to subsidize Plan expenses, his allegations still fail to state a plausible claim for relief. Indeed, the district court dismissed the original complaint after accepting Plaintiff's fiduciary-status allegations. 1-ER-26-39. And the allegations in his amended complaint have the same deficiencies. 1-ER-11-19.

The Supreme Court has made clear that the "principal function" of ERISA is to "protect contractually defined benefits." *US Airways, Inc. v. McCutchen*, 569

36

U.S. 88, 100 (2013) (citation omitted).  Congress was especially concerned, before ERISA, that employees would sometimes be "deprived of anticipated benefits."  29 U.S.C. § 1001(a).  It decided that once "employers have guaranteed them certain benefits," employees should "not be left empty-handed."  *Lockheed*, 517 U.S. at 887. By the same token, ERISA's scheme of rights and obligations "is built around reliance on the face of written plan documents."  *Curtiss-Wright*, 514 U.S. at 83.

Consistent with these principles, this Court has likewise emphasized that while ERISA "requires fiduciaries to comply with a plan as written unless it is inconsistent with ERISA," the statute "does no more than protect the benefits which are due to an employee under a plan."  *Wright*, 360 F.3d at 1100 (citations omitted). In particular, ERISA "does not create an exclusive duty to maximize pecuniary benefits."  *Id.* (quoting *Collins v. Pension & Ins. Comm. of S. Cal. Rock Prods. & Ready Mixed Concrete Ass'ns*, 144 F.3d 1279, 1282 (9th Cir. 1998) (per curiam)).

Here, the Plan explicitly authorized using forfeitures "to reduce employer contributions, to restore benefits previously forfeited, to pay Plan expenses, or for any other permitted use."  2-ER-120 (Plan § 11(h)).  Plaintiff does not (and could not) contend that this provision is not "consistent with" ERISA.  29 U.S.C. § 1104(a)(1)(D).  Nor does he identify any provision of ERISA that prohibits using forfeitures as the Plan expressly authorizes.  Yet he still wants to effectively rewrite this provision so that HP is almost always required to apply forfeitures to provide an

37

additional benefit to participants. The only scenario in which Plaintiff would allow Plan forfeitures to be applied toward contributions is the rare scenario in which HP is at risk of being financially unable to make required contributions. *See* Pl. Br. 21. The district court rightly rejected this argument as incompatible with settled law. *See, e.g.*, *Barragan*, 2024 WL 5165330, at *5 (agreeing with the district court's conclusion in this case). "Because [HP] complied with the Plan's lawful terms and [was] under no legal obligation to deviate from those terms, [HP] provided Plaintiff[] with [his] benefits due." *Wright*, 360 F.3d at 1100.[3]

## A.    Plaintiff fails to adequately allege a breach of the duty of loyalty.

Under the duty of loyalty, fiduciaries must discharge their duties solely in the interest of participants and beneficiaries and for the exclusive purpose of providing benefits to them and defraying reasonable expenses. 29 U.S.C. § 1104(a)(1)(A). This Court recently remarked, however, that because ERISA fiduciaries often wear multiple hats, ERISA "does not prohibit 'the mere act of becoming a trustee with

---

[3]    Plaintiff suggests that *Wright* is inapposite because the action that the *Wright* plaintiffs preferred "would have been in violation of the Plan's express terms." 360 F.3d at 1097. That is an oversimplification. The *Wright* plaintiffs contended that the employer violated its fiduciary duties by entering a separate "Side Agreement" with a union not to entertain plan amendments that, according to the plaintiffs, would have benefited them. *Id.* at 1095, 1100. The key takeaway from *Wright*, though, is not its particular facts, but its recognition that ERISA's fiduciary duties do not obligate fiduciaries to prioritize maximizing benefits over adherence to the terms of the plan. And Plaintiff disregards how his position would override the Plan terms granting HP sole discretion about whether to cover Plan expenses.

conflicting interests," nor does ERISA "expressly prohibit a trustee from having dual loyalties." *Anderson*, 137 F.4th at 1026 (quoting *Friend v. Sanwa Bank Cal.*, 35 F.3d 466, 469 (9th Cir. 1994)). Most importantly for this case, this Court, consistent with other circuit court authority, has already rejected the idea that Section 1104(a)(1)(A) obligates fiduciaries to maximize participants benefits when they have the power to do so. *See Wright*, 360 F.3d at 1100. Section 1104 "creates no exclusive duty of maximizing pecuniary benefits." *Foltz v. U.S. News & World Rep., Inc.*, 865 F.2d 364, 373 (D.C. Cir. 1989). "Under ERISA the fiduciaries' duties are found largely in the terms of the plan itself." *Id.* Here, there is no dispute that HP's use of forfeitures was consistent with the terms of the Plan. Nor is there any dispute that forfeitures used as employer contributions continue to be devoted exclusively to providing benefits to participants and beneficiaries. They do not leave the Plan or satisfy any obligation HP has outside the Plan. Accordingly, Plaintiff failed to state a claim for breach of the duty of loyalty. The duty of loyalty instructs fiduciaries to discharge their duties "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A)(i). HP did that.

In amending his complaint, Plaintiff dropped a claim in his original complaint asserting a breach of ERISA's anti-inurement provision, 29 U.S.C. § 1103(c)(1). This decision all but concedes that he cannot state a disloyalty claim. The anti-

inurement provision mirrors the duty-of-loyalty provision, stating in relevant part that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of *providing benefits to participants in the plan* ... and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1) (emphasis added). This "provision demands only that plan assets be held for supplying benefits to plan participants." *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 22 (2004); *see also Hughes Aircraft*, 525 U.S. at 442 (Section 1103(c)(1) "focuses exclusively on whether fund assets were used to pay pension benefits to plan participants[.]"). If a plan exclusively uses assets in compliance with the anti-inurement provision—not for the benefit of the employer, but solely to provide benefits to participants and defray reasonable expenses—there can be no breach of the duty of loyalty.

That HP may ultimately contribute less "new money" to the Plan in a given year does not change the analysis. So long as the assets within the Plan were used to pay benefits, as they indisputably were, Section 1104(a)(1)(A) is satisfied. *See Hughes Aircraft*, 525 U.S. at 443 (rejecting argument that employer violated ERISA by directing surplus plan assets toward funding a new benefit); *see also Collins*, 144 F.3d at 1282 (holding that "future contributions not yet made" are not "plan assets").

Plaintiff argues, however, that HP breached its duty of loyalty because it has a financial incentive to use forfeitures to reduce its contributions while it is in the

40

"best interests of participants to use forfeitures to play Plan expenses." Pl. Br. 21. There is no limiting principle to this argument. By Plaintiff's logic, fiduciaries should always give participants more money, even if the participants are not entitled to it under the plan terms. And even just as to forfeitures specifically, Plaintiff's view would always deem it "disloyal" not to put forfeitures toward Plan expenses, unless the employer is at risk of "defaulting" on its contributions, because using the forfeitures to pay expenses automatically saves participants money. For employers like HP, the result would effectively be a categorical obligation to use forfeitures to offset expenses even though ERISA does not obligate employers to pay for plan expenses. *See Loomis*, 658 F.3d at 671. But this Court has rejected efforts to invent "per se" violations of the duty of loyalty. *Friend*, 35 F.3d at 469. "Congress never intended section 1104(a)(1) to establish a per se rule of fiduciary conduct." *Id.* If Congress wants to impose categorical obligations on ERISA fiduciaries, it does so explicitly. *See id.*

Plaintiff criticizes the district court for finding his categorical rule implausibly broad. Pl. Br. 27-29. There was nothing improper, however, about the district court's analysis. Nor, as Plaintiff asserts, did it apply an erroneous legal standard. It is blackletter law that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Because

41

Plaintiff's legal theory is "a swing for the fences" that would create a per se fiduciary duty to use available forfeitures to provide a benefit to Plan participants that they never were promised and have no right to demand, 1-ER-20, the district court was right to reject this unwarranted expansion of the duty of loyalty. Indeed, the categorical nature of Plaintiff's theory underscores that his attack is against a specific way of *designing* a plan—giving the sponsor a choice over whether to use forfeitures to reduce contributions, as opposed to requiring the sponsor to use forfeitures that way—and thus is an attack on a settlor decision, not a fiduciary one.

Plaintiff also errs in portraying HP's use of forfeitures as relieving a contribution "debt" obligation that HP has incurred under the terms of the Plan. *See, e.g.*, Pl. Br. 11, 13. Plaintiff's theory is circular (at best) because the scope of HP's obligation to contribute to the Plan is determined by the terms of the Plan, which expressly authorize applying forfeitures toward HP's contributions. 2-ER-120 (Plan § 11(h)).[4] As the district court observed, moreover, Plaintiff's characterization rests on a "distinction between 'new money' that HP contributes to the Plan as matching contributions and 'old money' that HP has already contributed to the Plan." 1-ER-36. That theory, as the district court rightly noted, lacks support in the Plan terms,

---

[4] Although Plaintiff highlights the Plan's requirement to pay matching contributions "as soon as reasonably practicable after the end of each calendar year," Pl. Br. 5 (citation omitted), he does not claim that HP's use of forfeitures was late under that requirement.

statutory text, or case law. *Id.* Again, exercising HP's lawful ability under the Plan to use forfeitures to meet the contribution formulas does not absolve HP of an obligation it has. Nor do participants have any claim outside the Plan terms to have contributions funded by "new money." Any "new money," by definition, has not been contributed to the Plan yet and thus has not become a Plan asset. *See, e.g.*, *Collins*, 144 F.3d at 1282.

Plaintiff's theory that using forfeitures to reduce employer contributions is not for employees' exclusive benefit is also at odds with settled tax law. The Internal Revenue Code also requires that a pension plan's qualified trust be used "for the exclusive benefit of [the] employees or their beneficiaries." 26 U.S.C. § 401(a). If applying forfeitures toward employer contributions were not "in the interest of participants or beneficiaries" as Plaintiff supposes is true for 29 U.S.C. § 1104(a)(1)(A), neither would it be "for [their] exclusive benefit" under 26 U.S.C. § 401(a). But as discussed above in Section I, sixty years of unbroken tax law says otherwise.

And if Plaintiff's novel theory succeeds, the ultimate result will not be that participants get "free" pension plans without having to bear any administrative expenses. The result may well be, instead, that employers are less willing to continue making current levels of matching contributions, or that employers rewrite plans to prohibit using forfeitures to pay administrative expenses. Neither result serves

43

ERISA's goals. For all these reasons, the district court's dismissal of Plaintiff's duty of loyalty claim was correct.

### B. Plaintiff fails to adequately allege a breach of the duty of prudence.

Plaintiff's duty of prudence claim shares many of the same problems as his duty of loyalty claim. The duty of prudence is a process-based duty, and courts evaluate allegations of imprudence based on "a fiduciary's conduct in arriving at [the] decision, not on its results." *Anderson*, 137 F.4th at 1021 (citation omitted). The question is whether the fiduciaries, "at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the [potential] options." *Id.* (quoting *Wright*, 360 F.3d at 1097). And "[b]ecause the content of the duty of prudence turns on 'the circumstances . . . prevailing' at the time the fiduciary acts, the appropriate inquiry will necessarily be context specific." *Dudenhoeffer*, 573 U.S. at 425 (quoting 29 U.S.C. § 1104(a)(1)(B)).

But here, too, Plaintiff seeks to impose a rule that would make it categorically plausible that a fiduciary acted imprudently if it chooses to use forfeitures to reduce employer contributions rather than to pay expenses for participants. Any plaintiff in such circumstances could allege, as Plaintiff does, that the fiduciary had a conflict of interest, failed to adequately and impartially investigate the supposedly superior option of paying expenses, and failed to delegate the decision to an "independent nonconflicted decisionmaker." Pl. Br. 25-26. If these speculative and boilerplate

allegations sufficed, the result would be the "same categorical rule" as his loyalty claim: "forfeitures must always be used to pay Plan participants' administrative expenses before they can be allocated to reducing a company's matching contributions." 1-ER-16. "Such a categorical rule is inconsistent with the context-specific inquiry that ERISA requires[.]" *Hughes*, 595 U.S. at 173; *see also, e.g.*, *Wright*, 2025 WL 1683642, at *5 ("This theory runs contrary to the Supreme Court's instruction that the plausibility of allegations of breach of fiduciary duty is a 'context specific' inquiry dependent on the particular circumstances at issue." (quoting *Dudenhoeffer*, 573 U.S. at 421)); *McWashington*, 2025 WL 1736765, at *14 ("Plaintiffs' proposition, namely that re-allocating 'forfeiture suspense account' funds to reduce Nordstrom's contributions was *per se* imprudent, runs contrary to the principle that 'the content of the duty of prudence turns on "the circumstances . . . prevailing" at the time the fiduciary acts' and 'the appropriate inquiry will necessarily be context specific.'" (quoting Judge Freeman's decision below, at 1-ER-29)). And Plaintiff's position is also inconsistent with the principle that ERISA does not obligate fiduciaries to increase benefits not promised by their plans. *See Wright*, 360 F.3d at 1100; *Collins*, 144 F.3d at 1282.

ERISA's instruction to measure fiduciary conduct based on "the circumstances then prevailing" poses a substantial problem for Plaintiff's theory. Here, those "circumstances" include decades of legal support for HP's actions,

including the regulations, House Report, and guidance discussed in Section I, as well as the Plan document itself. *See McWashington*, 2025 WL 1736765, at *14 ("In light of the almost 40-year-old public document referenced by the IRS, plaintiffs must, to state a plausible claim of imprudence and/or disloyalty, plead something more than an ordinary use of forfeited funds to pay future employer contributions, or in other words, behavior that is not consistent with the practices of perhaps all 401(k) plan fiduciaries."). Yet despite these circumstances and the context-sensitive nature of the responsibility, Plaintiff's theory effectively permits only one choice: use forfeitures to pay Plan costs. The district court properly rejected that theory.

### C. Plaintiff fails to adequately allege a prohibited transaction.

Plaintiff's last claim is that HP's decision to use forfeitures to reduce contributions is a prohibited transaction under 29 U.S.C. § 1106(b)(1). Although Plaintiff at times seems to concede that HP could revise its Plan terms to make such use of forfeitures lawful, his prohibited transaction claim implies otherwise. On his reading of Section 1106(b)(1), it seems it would always be "self-dealing" to use forfeitures to reduce contributions. Pl. Br. 38-39.

In all events, Plaintiff's claim fails because, as the district court concluded, it is not premised on any transaction between the Plan and HP or anyone else. When HP uses forfeitures as contributions, they are used to pay Plan benefits just like any contribution would be. But the Supreme Court has explained that "the payment of

46

benefits is ... not a 'transaction' in the sense that Congress used that term." *Lockheed*, 517 U.S. at 892-93. So likewise here, as the district court concluded, using forfeitures to fund other participants' benefits is not a transaction prohibited by Section 1106. 1-ER-18; 1-ER-38.

Plaintiff says *Lockheed* is irrelevant to Section 1106(b)(1). Pl. Br. 44-45. He overlooks, however, that while the Supreme Court was specifically construing Section 1106(a)(1)(D) in *Lockheed*, it drew support for its conclusion from Section 1106 as a whole, which the Court characterized as "prohibit[ing] fiduciaries from involving the plan and its assets in certain kinds of business deals" and "bar[ring] categorically a *transaction* that is likely to injure the pension plan." 517 U.S. at 888 (emphasis added) (citation and brackets omitted).

And even if *Lockheed* were not enough to conclude that a "transaction" is necessary for Plaintiff's claim, this Court's decision in *Wright* would be. There, the Court applied *Lockheed*'s transaction requirement not only to a claim under Section 1106(a) but also to a claim under Section 1106(b). *See Wright*, 360 F.3d at 1101 ("Plaintiffs fail to identify any transaction that falls within § 1106(a)(1) or (b)."). According to Plaintiff, *Wright* would have treated any "use of the Plan's assets" as a transaction subject to Section 1106. Pl. Br. 45-46. But that is not what *Wright* says, as courts throughout this Circuit have recognized: rather, *Wright* says that if there is no transaction, then, under *Lockheed*, there is no violation of Section

47

1106(b). 360 F.3d at 1101; *see also, e.g.*, *McWashington*, 2025 WL 1736765, at *16 (citing *Lockheed* and the Court's decision in *Wright* to conclude that using forfeitures to contribute benefits to employees does not constitute a transaction within the meaning of Section 1106); *Wright*, 2025 WL 1683642, at *6 (same); *Madrigal*, 2025 WL 1299002, at *7 (same); *Sievert*, 2025 WL 1248922, at *6 (same).

Plaintiff argues that the statutory text does not support a requirement to plead a transaction because Subsection (b)(1) does not use the word "transaction" and instead uses the phrase "deal with the assets of the plan." 29 U.S.C. § 1106(b)(1). This argument draws from a dictionary definition of "deal with," which in certain contexts can refer very broadly to interacting with something. *See* Pl. Br. 40. But "deal with" also has other meanings that imply a transaction and that fit much better within the context of Section 1106. *See, e.g.*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/deal%20with (listing, as one definition of to "deal with," "to make business agreements with (someone)"); WEBSTER'S NEW WORLD DICTIONARY (college ed. 1968) (listing, as one definition of to "deal," "to do business; trade (*with* or *in*)"); BLACK'S LAW DICTIONARY 487 (rev. 4th ed. 1968) (defining to "deal" as "[t]o traffic; to transact business; to trade").

In choosing between potential meanings of "deal with," the Court should consider Section 1106 as a whole, as the Supreme Court did in *Lockheed*. "Under

the familiar interpretive canon *noscitur a sociis*, 'a word is known by the company it keeps.'" *Dubin v. United States*, 599 U.S. 110, 124 (2023) (citation omitted). "[T]his canon is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress." *Id.* at 124- 25 (citation omitted); *see also, e.g.*, *Oracle Int'l Corp. v. Rimini Street, Inc.*, 123 F.4th 986, 994-95 (9th Cir. 2024). Here, reading the statutory provision as a whole reveals that Section 1106 lists a series of "transaction[s]" and "business deals" that are "likely to injure the pension plan." *Lockheed*, 517 U.S. at 888 (citation omitted).

And more recently, the Supreme Court has highlighted that one helpful textual clue when construing Section 1106 is its heading: "Section 1106's heading is plain: 'Prohibited transactions.'" *Cunningham v. Cornell Univ.*, 145 S. Ct. 1020, 1029 (2025). Even if the words "deal with" might be susceptible to several meanings when read in isolation, the section's "title is a useful clue." *Dubin*, 599 U.S. at 121. Another useful clue is the subsection title of Section 1106(b): "Transactions between plan and fiduciary." These headings, along with the rest of Section 1106, reinforce that Section 1106(b)(1) is identifying a prohibited class of transactions. Plaintiff's contrary reading of this provision is simply not credible when it appears in a statutory section and subsection that are exclusively devoted to transactions that are categorically prohibited. As the Supreme Court reiterated in *Cunningham*:

49

"Section 1106 . . . categorically bar[s] certain transactions deemed 'likely to injure the pension plan.'" 145 S. Ct. at 1025 (citation omitted).[5]

Plaintiff cites several cases finding Section 1106(b)(1) violations where the defendant misappropriated plan assets. Pl. Br. 41 (citing *Patelco Credit Union v. Sahni*, 262 F.3d 897, 911 (9th Cir. 2001), and *Guyan Int'l, Inc. v. Pro. Benefits Adm'rs, Inc.*, 689 F.3d 793, 798 (6th Cir. 2012)). But a wrongful transfer of property from the plan to the fiduciary is a transaction in an obvious way that keeping assets within a plan to pay benefits is not. There is no allegation here that any forfeited assets were transferred out of the Plan.

Nor is Plaintiff's reading supported by the presumption against surplusage. *Contra* Pl. Br. 43. Plaintiff says that if "deal with" referred to transaction deals, there would be no reason for Congress to include the word "transaction" in Section 1106(b)(3). Not so. In that provision, Congress prohibited a fiduciary from "receiv[ing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." 29 U.S.C. § 1106(b)(3). There, the word "transaction" is necessary to make clear which

---

[5] Plaintiff cites *Friend* to suggest otherwise, but it does not support his reading of Section 1106(b)(1). Pl. Br. 40. There, this Court merely noted a necessary condition for a violation of Section 1106(b)(1), not a sufficient one: "Whether a trustee is also an employer or a creditor, it *only* violates section 1106(b) when it uses the assets of a plan for its own benefit." *Friend*, 35 F.3d at 470 (emphasis added). Plaintiff's quotation misleadingly omits the "only."

sorts of transactions are at issue—those "involving the assets of the plan." If Congress had just said "any party dealing with such plan," the provision might extend to dealings beyond those Congress intended.

In addition to challenging whether a transaction is necessary for his prohibited transaction claim, Plaintiff now argues that he alleged a transaction like the transaction prohibited in Section 1106(a)(1)(B): an "extension of credit between the plan and a party in interest." Pl. Br. 47. This argument has two problems. First, he never argued below in opposing HP's motion that his prohibited transaction claim involved an extension-of-credit transaction or any other transaction. He merely argued that a transaction was unnecessary. *See* SER-29-33. The Court should not consider this argument raised for the first time on appeal. *See, e.g.*, *Doe v. Horne*, 115 F.4th 1083, 1112 (9th Cir. 2024) ("[W]e ordinarily will not consider arguments raised for the first time on appeal.").

The second problem, though, is that the argument is meritless. Plaintiff admits, as he must, that using forfeitures to reduce contributions "satisf[ies] [HP's] obligation to make contributions to the Plan." Pl. Br. 48 (emphasis omitted). The Plan expressly permits the use of forfeitures "to reduce employer contributions." 2-ER-120 (Plan § 11(h)). Because this conduct satisfies HP's contributory obligations, there is no basis to characterize it as an extension of credit for unsatisfied obligations. This newly raised theory cannot salvage Plaintiff's claims.

51

## CONCLUSION

For all these reasons, the Court should affirm the judgment of the district court.

Dated:  July 2, 2025

DEBORAH S. DAVIDSON
MATTHEW A. RUSSELL
SAMUEL D. BLOCK
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Chicago, IL  60606
(312) 324-1159

Respectfully submitted,

s/ Michael E. Kenneally
MICHAEL E. KENNEALLY
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC  20004
(202) 739-3000

*Counsel for Defendant-Appellee HP Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS

*Instructions for this form:*

**9th Cir. Case Number(s)** __25-826_____

I am the attorney or self-represented party.

**This brief contains __12,405__ words,** including <u>zero</u> words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[**x**] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** _s/ Michael E. Kenneally_____ **Date** _July 2, 2025_____
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                                                                    *Rev. 12/01/22*