No. 25-826

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

PAUL HUTCHINS, as a representative of a class of participants
and beneficiaries on behalf of the HP Inc. 401(k) Plan,

*Plaintiff-Appellant,*

v.

HP INC.,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of California
No. 5:23-cv-05875-BLF
Hon. Beth Labson Freeman

---

## APPELLANT'S REPLY BRIEF

---

Matthew B. Hayes (SBN 220639)
mhayes@helpcounsel.com
Kye D. Pawlenko (SBN 221475)
kpawlenko@helpcounsel.com
HAYES PAWLENKO LLP
1414 Fair Oaks Avenue, Ste. 2B
South Pasadena, CA 91030
Tel.: 626.808.4357
*Attorneys for Appellant*
*Paul Hutchins*

# TABLE OF CONTENTS

**Page**

INTRODUCTION................................................................................1

ARGUMENT..................................................................................3

I. HP was Acting in a Fiduciary Capacity.............................................3

II. HP Plausibly Breached its Fiduciary Duties.............................10

    A. HP's Duty of Loyalty Arguments are Meritless......................11

    B. HP's Duty of Prudence Arguments are Meritless....................14

    C. DOL Disputes the Facts Alleged Based on Speculation............17

III. HP Dealt With Plan Assets in Its Own Interest.........................19

CONCLUSION................................................................................24

CERTIFICATE OF COMPLIANCE................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                       **Page(s)**

*Acosta v. Brain,*
910 F.3d 502 (9th Cir. 2018)……………………………………11

*Akers v. Palmer,*
71 F.3d 226 (6th Cir. 1995)……………………………………4

*Anderson v. Intel Corp. Inv. Pol'y Comm.,*
137 F.4th 1015 (9th Cir. 2025)…………………………………15

*Ariz. State Carpenters Pension Tr. Fund v. Citibank,*
125 F.3d 715 (9th Cir. 1997)……………………………………2

*Beck v. PACE Int'l Union,*
551 U.S. 96 (2007)……………………………………………3

*Braden v. Wal-Mart Stores, Inc.,*
588 F.3d 585 (8th Cir. 2009)…………………………………18

*Briscoe v. Fine,*
444 F.3d 478 (6th Cir. 2006)…………………………………7-8

*Bugielski v. AT&T Servs., Inc.,*
76 F.4th 894 (9th Cir. 2023)………………………………20, 21

*City & Cnty. of San Francisco v. EPA,*
145 S. Ct. 704 (2025)………………………………………21, 22

*Costar Grp., Inc. v. Com. Real Estate Exch., Inc.,*
141 F.4th 1075 (9th Cir. 2025)………………………………18

*Coulter v. Morgan Stanley & Co. Inc.,*
753 F.3d 361 (2d Cir. 2014) (per curiam)……………………6

*David P. Coldesina, D.D.S. v. Estate of Simper,*
407 F.3d 1126 (10th Cir. 2005)………………………………8

iii

*Fifth Third Bancorp. v. Dudenhoeffer,*
    573 U.S. 409 (2014)……………………………………………14, 16

*Fletcher v. Kroger Co.,*
    942 F.2d 1137 (7th Cir. 1991)………………………………....3-4

*Friend v. Sanwa Bank Cal.,*
    35 F.3d 466 (9th Cir. 1994)……………………………....20-21

*Guidry v. Sheet Metal Workers Nat. Pension Fund,*
    493 U.S. 365 (1990)………………………………………….13

*Howard v. Shay,*
    100 F.3d 1484 (9th Cir. 1996)………………………………14-15

*Hughes Aircraft Co. v. Jacobson,*
    525 U.S. 432 (1999)……………………………………….3, 4

*Hughes v. Nw. Univ.,*
    63 F.4th 615 (7th Cir. 2023)………………………………...18

*In re Luna,*
    406 F.3d 1192 (10th Cir. 2005)………………………………7

*IT Corp. v. Gen. Am. Life Ins. Co.,*
    107 F.3d 1415 (9th Cir. 1997)………………………….......7

*Lebron v. Nat'l R.R. Passenger Corp.,*
    513 U.S. 374 (1995)…………………………………………23

*Lockheed Corp. v. Spink,*
    517 U.S. 882 (1996)……………………………………..3, 19

*Loomis v. Exelon Corp.,*
    658 F.3d 667 (7th Cir. 2011)…………………………………5-6

*Mator v. Wesco Distrib., Inc.,*
    102 F.4th 172 (3d Cir. 2024)………………………………18

iv

*McManus v. Clorox Co.*,
   2025 WL 732087 (N.D. Cal. Mar. 3, 2025)...............................13

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
   583 U.S. 109 (2018)..............................................................20

*Nat'l R.R. Passenger Corp. v. Su*,
   41 F.4th 1147 (9th Cir. 2022)..............................................22

*Pegram v. Herdrich*,
   530 U.S. 211 (2000)...........................................................3, 8

*Pilkington PLC v. Perelman*,
   72 F.3d 1396 (9th Cir. 1995).............................................11, 12

*Rodriguez v. Intuit Inc.*,
   744 F. Supp. 3d 935 (N.D. Cal. 2024)....................................9

*Rotkiske v. Klemm*,
   589 U.S. 8 (2019)................................................................22

*Sacerdote v. New York Univ.*,
   9 F.4th 95 (2d Cir. 2021).............................................15-16, 18-19

*Santomenno v. Transam. Life Ins. Co.*,
   883 F.3d 833 (9th Cir. 2018)................................................9

*Sprague v. Cent. States, Se. & Sw. Areas Pension Fund*,
   269 F.3d 811 (7th Cir. 2001)................................................23

*Trs. of S. Cal. Bakery Drivers Sec. Fund v. Middleton*,
   474 F.3d 642 (9th Cir. 2007).................................................7

*Tussey v. ABB, Inc.*,
   850 F.3d 951 (8th Cir. 2017)................................................12

*United States v. Pallares-Galan*,
   359 F.3d 1088 (9th Cir. 2004).........................................22, 23

*Varity Corp. v. Howe*,
  516 U.S. 489 (1996)……………………………………………………4

*Walling v. Brady*,
  125 F.3d 114 (3d Cir. 1997)…………………………………………4

*Werdenhausen v. Benicorp Ins. Co.*,
  487 F.3d 660 (8th Cir. 2007)………………………………………12

*Wright v. Oregon Metallurgical Corp.*,
  360 F.3d 1090 (9th Cir. 2004)…………………………………13-14, 20

*Yee v. City of Escondido*,
  503 U.S. 519 (1992)………………………………………………23

**Statutes**

29 U.S.C. § 1002………………………………………………………8

29 U.S.C. § 1106………………………………………………………22

29 U.S.C. § 1144………………………………………………………13

# INTRODUCTION

This case does not involve a dispute over whether forfeitures may be used to reduce employer contributions. Everyone agrees that plan sponsors are free to design their plans to provide that forfeitures will be used to offset contributions.

This case does not involve a dispute over whether plan sponsors must pay the expenses of administering the plan. Everyone agrees that plan sponsors may write their plans to provide that administrative expenses will be paid by the plan's participants.

Devoting many pages to these and other undisputed issues, HP's Answering Brief works hard to obscure the actual dispute: whether a fiduciary, when entrusted with discretion to choose between using forfeitures to reduce contributions or defray expenses, must endeavor to choose the use that is best for plan participants. On this dispositive issue, HP's Answering Brief is inexplicably silent.

HP does not dispute that fiduciaries must act in the best interests of participants. Nor does HP argue that it acted in the participants' best interests when it opted to use all forfeitures to reduce its contributions.

Instead, HP argues that it was not required to consider which use was best for participants because it was not acting as a fiduciary.

Fatal to HP's argument, however, is its concession that the reallocated forfeitures were "plan assets." Because the forfeitures were assets of the Plan, HP was necessarily acting as a fiduciary when it exercised control over their management and disposition. On this point, the Department of Labor ("DOL") and Plaintiff agree. (DOL Br.15.)

Of course, as Plan sponsor, HP could amend the Plan to require that all forfeitures be used to reduce contributions, or that forfeitures first be used to reduce contributions and then to pay expenses. In either scenario, the reallocation of forfeitures would be controlled by the Plan rather than HP and would cease to be a fiduciary function. *See Ariz. State Carpenters Pension Tr. Fund v. Citibank*, 125 F.3d 715, 721–22 (9th Cir. 1997) ("A person or entity who performs only ministerial services or administrative functions within a framework of policies, rules, and procedures established by others is not an ERISA fiduciary."). But what HP cannot do is entrust itself with discretionary control over the management and disposition of Plan assets and then exercise that discretion to benefit itself over the Plan's participants.

# ARGUMENT

## I.   HP WAS ACTING IN A FIDUCIARY CAPACITY.

HP argues that it was wearing its "settlor hat" – not its "fiduciary hat" – when, year after year, "it decided to apply forfeitures not to fund Plan expenses but to reduce employer contributions." (HP Br. 25.) As established below, HP was wearing its "fiduciary hat" because it was exercising control over Plan money while administering the Plan according to its terms, not deciding what those terms will be.

"Which hat the employer is proverbially wearing depends upon the nature of the function performed." *Beck v. PACE Int'l Union*, 551 U.S. 96, 101 (2007). Settlor functions concern "the composition or design of the plan itself." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999). "[A]n employer's decisions about the content of a plan are not themselves fiduciary acts." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). So, when employers "adopt, modify, or terminate" the plans that they sponsor, they "are analogous to the settlors of a trust." *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996). *See also Fletcher v. Kroger Co.*, 942 F.2d 1137, 1139 (7th Cir. 1991) ("[W]hen an employer decides to establish, amend, or terminate a benefits plan, as opposed to managing

3

any assets of the plan and administering the plan in accordance with its terms, its actions are not to be judged by fiduciary standards.") (citation omitted).

Fiduciary functions "consist of such actions as the administration of the plan's assets." *Hughes*, 525 U.S. at 444. "The ordinary trust law understanding of fiduciary 'administration' of a trust is that to act as an administrator is to perform the duties imposed, or exercise the powers conferred, by the trust documents." *Varity Corp. v. Howe*, 516 U.S. 489, 502 (1996). The line between fiduciary and settlor is thus clear: an employer is "subject to fiduciary restrictions when managing a plan according to its terms, but not when it decides what those terms are to be." *Akers v. Palmer*, 71 F.3d 226, 230 (6th Cir. 1995). *See also Walling v. Brady*, 125 F.3d 114, 119 (3d Cir. 1997) ("The jurisprudence of this area is marked by the drawing of a sharp distinction between 1) the sponsors of a plan acting as an administrator (which is discretionary and therefore fiduciary) and 2) the sponsors of a plan amending, altering, terminating, or otherwise redesigning the plan itself (functions considered to be not discretionary and therefore not fiduciary).").

Here, the district court correctly found that HP's decisions to use forfeitures to reduce its contributions were "decisions of Plan administration rather than Plan design." (1-ER-27.) Section 11(h) of the Plan provides that "[a]mounts forfeited under this Section may be used to reduce employer contributions, to restore benefits previously forfeited, to pay Plan expenses, or for any other permitted use." (2-ER-120 (Plan Doc. § 11(h)).) When HP decided at the end of each year to use all Plan forfeitures to reduce its contributions, it did so pursuant to its administration of § 11(h) of the Plan in its role as Plan administrator.

DOL agrees that HP's decisions were "quintessential fiduciary decision[s]." (DOL Br. 15.) HP does not dispute that it made these decisions while administering, as opposed to designing, the Plan. HP attempts to blur the line between fiduciary and settlor by arguing that settlor decisions are "not limited to that [design] context." (HP Br. 29.) But HP fails to cite any authority in support of its assertion that a plan sponsor can act in a settlor capacity when controlling plan assets.

The two cases HP relies on are easily distinguishable. In *Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011), *abrogated in part on other grounds by Hughes v. Northwestern University*, 595 U.S. 170 (2022), the

plaintiffs did not challenge the "management of the assets that are under an administrator's control," but instead alleged that the company "should have ponied up additional money … to cover the operating expenses of their retirement vehicles." *Id.* at 671. Here, Plaintiff does not argue that HP should have "covered" the Plan's expenses with its own money; he argues that HP should have used the Plan's forfeitures to defray the Plan's expenses as permitted by § 11(h) of the Plan. Accordingly, Plaintiff challenges HP's fiduciary decisions made while administering the Plan's forfeitures provision, not its Plan design decision requiring that Plan expenses be paid with Plan money.[1]

In *Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361 (2d Cir. 2014) (per curiam), the plaintiffs alleged that the company should have funded the plan with cash instead of company stock. *Id.* at 364. The Second Circuit held that the company was not acting as a fiduciary because "at the time of the [funding] decision, the [c]ompany [s]tock was not a [p]lan asset." *Id.* at 367. Here, at the time of HP's decisions to

---

[1] The Chamber of Commerce argues that "the decision whether to cover plan expenses" is a "plan design decision." (Chamber Br. 19.) That would be true if HP were deciding whether to use its own money to "cover" the expenses. Here, HP was deciding which bucket of Plan money—forfeitures or participant accounts—to use to pay expenses.

"fund" its contribution obligations with forfeitures, the forfeitures were indisputably Plan assets. Therefore, HP's decisions to use Plan assets to "fund" contributions were not settlor decisions.[2]

The law is clear: "[A] person with authority to direct payment of a plan's money" is "deemed a fiduciary." *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1421 (9th Cir. 1997). Accordingly, HP's decisions directing that the Plan's money be used to offset its contributions rather than defray the Plan's expenses "'must be judged against ERISA's fiduciary standards.'" *Trs. of S. Cal. Bakery Drivers Sec. Fund v. Middleton*, 474 F.3d 642, 646 (9th Cir. 2007) (quoting *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 106 (1993)). *See also Briscoe v. Fine*, 444 F.3d 478, 494 (6th Cir. 2006) ("[A]ny person or entity that exercises control over the assets of an ERISA-covered plan … acquires fiduciary status with regard to the control of those

---

[2] While DOL agrees that HP was acting as a fiduciary, it argues more generally that "funding decisions are settlor decisions, not fiduciary ones." (DOL Br. 13.) However, in each of the funding cases cited by DOL, the plan sponsor was deciding whether to fund the Plan with its own money. *See, e.g., In re Luna*, 406 F.3d 1192, 1207 (10th Cir. 2005) (holding that an employer's "decision to use their limited funds to pay other business expenses rather than to make contributions to the Funds was a business decision"). Here, HP was deciding whether to use the Plan's money to reduce the contributions it voluntarily agreed to pay.

assets"); *David P. Coldesina, D.D.S. v. Estate of Simper*, 407 F.3d 1126, 1132 (10th Cir. 2005) ("In Congress's judgment, and consistent with general trust law, parties controlling plan assets are *automatically* in a position of confidence by virtue of that control, and as such they are obligated to act accordingly.") (emphasis in original).

HP argues that it is not "exercising control over the disposition of Plan assets when it decides to use them to reduce contributions" because the assets "are simply distributed among various participants' individual accounts." (HP Br. 32.) HP overlooks Supreme Court precedent holding that "fiduciary duties characteristically attach to decisions about ... distributing property to beneficiaries." *Pegram*, 530 U.S. at 231. Furthermore, a person is a fiduciary to the extent they exercise any control over the "management *or* disposition" of plan assets. 29 U.S.C. § 1002(21)(A)(i) (emphasis added). So even if HP did not exercise control over the "disposition" of forfeitures, HP unquestionably exercised control over their "management" when it decided upon their use. And by directing that expenses be deducted from participants' accounts instead of forfeitures, HP exercised control over the disposition of the Plan assets used to pay the expenses.

HP cites to *Santomenno v. Transamerica Life Insurance Co.*, 883 F.3d 833 (9th Cir. 2018), for the proposition that it was "not involved in plan management." (HP Br. 32.) However, the issue there was whether a service provider is involved in plan management when "negotiating its prospective fees" *before* being retained by the Plan. 883 F.3d at 838. Here, HP was deciding how to reallocate Plan assets *after* becoming Plan administrator while administering the Plan's forfeitures provision. "As such, it acted in a fiduciary capacity when making those decisions." *Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935, 943 (N.D. Cal. 2024).

Finally, HP argues that it was acting as settlor because the Plan gives "the Company" as Plan sponsor "complete discretion over whether to subsidize Plan administrative expenses." (HP Br. 35.) But Plaintiff does not challenge HP's settlor decision not to "subsidize" Plan expenses with its own money; he challenges HP's fiduciary decisions to use assets in participants' accounts rather than forfeitures to pay Plan expenses.

HP argues, incorrectly, that "[h]aving to use forfeitures to pay Plan expenses would have the same effect as requiring HP to pay the expenses" itself because "[i]f forfeitures must be redirected from contributions to expenses, HP will have to pay more to make up the

9

contribution gap." (HP Br. 35.) To be sure, HP might have to pay more if forfeitures are used to pay Plan expenses, but that is not because HP is "subsidizing" those expenses. It is because HP agreed to make a level of matching contributions and forfeitures might not be available to offset those contributions. While using forfeitures to pay Plan expenses might deplete the pool of Plan assets available to *reduce* HP's contributions, it would never *increase* HP's contributions above the level provided for in the Plan. In other words, HP might have to pay more than it had been paying because it had been using forfeitures to reduce contributions. But HP would never have to pay more than it voluntarily agreed to pay.

## II.  HP PLAUSIBLY BREACHED ITS FIDUCIARY DUTIES.

HP's Answering Brief goes to great lengths to avoid addressing the key issue at the heart of this case: whether HP, when administering the Plan's forfeitures provision, was required to choose the best option for the Plan's participants. It is undisputed that fiduciaries must act in the participants' best interests, and HP never actually argues that its chosen use of forfeitures was in the participants' best interests. Instead, HP raises numerous other arguments, each without merit, to draw the Court's attention away from this dispositive issue.

10

## A. HP's Duty of Loyalty Arguments are Meritless.

HP argues that so long as its chosen use of forfeitures was "consistent with the terms of the Plan" and for the "exclusive purpose" of providing benefits, "there can be no breach of the duty of loyalty." (HP Br. 39-40.) But the requirement to act "solely in the interest" of participants is in addition to the "exclusive purpose" requirement. *Acosta v. Brain*, 910 F.3d 502, 519 (9th Cir. 2018) (holding that the requirements are "conjunctive" and therefore each must be satisfied).[3]

Because fiduciaries must also act "solely in the interest" of participants, even when fiduciaries use plan assets for a permissible purpose, they may still breach their duty of loyalty if their decision is "motivated by economic self-interest." *Pilkington PLC v. Perelman*, 72 F.3d 1396, 1402 (9th Cir. 1995). Accordingly, HP is liable if, as Plaintiff alleges, its "motivation" for choosing to use forfeitures to reduce its contributions "deviated from that mandated by ERISA." *Id.* at 1401.

---

[3] HP and the Chamber of Commerce emphasize that ERISA's anti-inurement provision and the Tax Code also contain "exclusive purpose" or "exclusive benefit" language restricting permissible uses of plan assets. But neither statute includes the additional "solely in the interest" requirement of § 1104(a)(1) at issue here.

11

HP argues that Plaintiff's "position would override the Plan terms granting HP sole discretion about whether to cover Plan expenses." (HP Br. 38 n.3.) As already explained, Plaintiff does not contend that HP was required to "cover" Plan expenses with its own money; he contends that Plan expenses should have been paid with forfeitures. And while the Plan grants HP discretion to select from a menu of options for how forfeitures may be used, "the choice of whose interests to favor, the [participants'] or [its] own, was not one over which [HP] could claim any discretion." *Tussey v. ABB, Inc.*, 850 F.3d 951, 958 (8th Cir. 2017).

"[W]hen," as here, a "plan makes alternative [options] available," the "decision-maker must act in accordance with its duties as ERISA fiduciary in choosing among those [options]," including "its obligation to 'discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries.'" *Werdenhausen v. Benicorp Ins. Co.*, 487 F.3d 660, 665-66 (8th Cir. 2007). If, as Plaintiff alleges here, the decision-maker is motivated by its own self-interest, it has "breached its fiduciary duty." *Id.* at 666-68. *See also Pilkington*, 72 F.3d at 1401-02 (finding triable issue of whether employer was "motivated by" its own "economic self-interest" when "purchasing an annuity contract").

12

HP argues that Plaintiff's position "contradict[s]" tax authorities that allow forfeitures to be used to reduce contributions. (HP Br. 17.) Contrary to HP's characterization, Plaintiff does not contend that ERISA prohibits "using forfeitures to reduce contributions." (HP Br. 2.) Nor does Plaintiff contend that choosing to use forfeitures to reduce employer contributions is a "per se" ERISA violation. (HP Br. 41.)

Plaintiff's position is simply that when deciding among a plan's permissible options for using forfeitures, a fiduciary must endeavor to choose the option that is in the participants' best interests. Here, "the Plan is set up in a way that allows" HP as Plan administrator "to decide who saves money"—HP or the Plan's participants. *McManus v. Clorox Co.*, 2025 WL 732087, at \*4 n.6 (N.D. Cal. Mar. 3, 2025). Therefore, ERISA required HP to "decide in favor of those it owes duties."[4] *Id.*

Finally, HP places heavy emphasis on this Court's statement in *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir.

_____

[4] The Chamber of Commerce argues that Plaintiff's claims are precluded by 29 U.S.C. § 1144(d) but fails to show how Plaintiff's claims would "alter, amend, modify, invalidate, impair, or supersede" tax law. *See Guidry v. Sheet Metal Workers Nat. Pension Fund*, 493 U.S. 365, 375 (1990) (holding that § 1144(d) only applies where ERISA "would 'modify, impair or supersede'" another federal enactment). Tax law is concerned with plan design, not fiduciary decision-making.

2004), that "ERISA does not create an exclusive duty to maximize pecuniary benefits." But HP conveniently elides the word "exclusive." The issue in *Wright* was whether a fiduciary has an obligation to "violat[e]" a plan's express restrictions to enable participants to obtain greater benefits than the plan permits. *Id.* at 1096-97. This Court held that a fiduciary's duty to "maximize pecuniary benefits" for participants does not go that far because the duty is not "exclusive" of the coequal duty to "comply with the plan as written unless it is inconsistent with ERISA."[5] *Id.* at 1100.

### B. HP's Duty of Prudence Arguments are Meritless.

HP argues that Plaintiff's imprudence allegations are too "speculative and boilerplate" to plausibly show that its "process" for deciding how to use forfeitures was flawed. (HP Br. 44-45.) But if, as Plaintiff alleges (2-ER-229-30 (FAC ¶ 27)), HP failed to undertake the required "intensive and scrupulous independent investigation of [its] options," *Howard v. Shay*, 100 F.3d 1484, 1488-89 (9th Cir. 1996)

---

[5] To the extent HP argues that fiduciaries have no duty to maximize retirement savings, it is foreclosed by *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014), which clarified that fiduciary "decisions" must be singularly focused on the "financial goals" of the participants, which is to "maximize retirement savings." *Id.* at 420-21.

(citation omitted), what additional facts could Plaintiff possibly allege beyond the absence of "any" investigation at all?

As this Court recently acknowledged, because the "details" concerning "the fiduciary's methods and actual knowledge" are in the exclusive "possession of that fiduciary," it is unreasonable to "demand that plaintiffs plead facts which tend systematically to be in the sole possession of defendants." *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015, 1025 (9th Cir. 2025) (citations omitted). For this reason, a plaintiff may plausibly "plead a breach of the duty of prudence" through "circumstantial factual allegations from which the court may reasonably infer from what is alleged that the process was flawed." *Id.* at 1022 (citations omitted).

Here, Plaintiff alleges facts showing that, over a period of many years, HP had a conflict of interest in administering the Plan's forfeitures provision, gave no thought to which use of forfeitures would be best for participants, and reflexively chose the option that best served its own self-interest. (2-ER-229-31 (FAC ¶¶ 26-37).) It is reasonable to infer from these factual allegations that HP's process was flawed. *See Sacerdote v. New York Univ.*, 9 F.4th 95, 111 (2d Cir. 2021)

("[T]he absence of a deliberative process may be enough to demonstrate imprudence.").

HP also asserts that "the circumstances then prevailing" preclude finding its decisions imprudent because tax authorities allowed forfeitures to be used to reduce employer contributions. (HP Br. 45-46.) This argument has two problems.

First, tax authorities also allowed forfeitures to be used to pay plan expenses but provided no guidance on which option a fiduciary should choose when deciding between them. So, "the circumstances then prevailing" did not relieve HP of its duty to choose the option that was best for participants.

Second, the Supreme Court has held that fiduciaries can violate the duty of prudence even when their actions are authorized by law. *See Fifth Third*, 573 U.S. at 426 (finding that ESOP fiduciaries could have breached their duty of prudence by continuing to invest in the stock of the plan sponsor notwithstanding that ERISA authorizes such investments and exempts ESOP fiduciaries from the duty to diversify). Therefore, it is no defense that tax authorities allowed plans to provide that forfeitures will be used to reduce contributions.

16

## C. DOL Disputes the Facts Alleged Based on Speculation.

As already noted, DOL agrees that HP's "allocation of forfeitures" is "a quintessential fiduciary decision that is subject to the fiduciary duties of loyalty and prudence." (DOL Br. 14-15.) DOL supports HP because it believes HP acted loyally and prudently as a matter of law. DOL's reasoning goes like this: if HP "chose to use forfeitures to pay Plan expenses rather than fund matching contributions," it might have created "risks" of "a funding shortfall" because HP might have "refused" to make required matching contributions, which might have resulted in "a potentially protracted legal dispute" in order "to obtain the full amount of matching contributions." (DOL Br. 19-20.)

DOL's predicted parade of horribles is unadulterated speculation. There is nothing in the record to suggest that there were ever any risks of a funding shortfall. Nor is there any evidence that HP even thought about the possibility of such risks when deciding how to use forfeitures. Indeed, HP, the only party with personal knowledge of why it chose to use forfeitures to reduce contributions, makes no such claims itself.

DOL's ostensible concerns about the risks of a funding shortfall are not only rank speculation but they also contradict Plaintiff's factual

17

allegations that, during the relevant period, HP had "in excess of $3 billion in cash and equivalents on hand" and there was "no risk" of HP "defaulting on its contribution obligations to the Plan." (2-ER-230 (FAC ¶ 32).) Likewise, DOL's suggestion that HP chose to use forfeitures to reduce its contributions to eliminate the risks of a funding shortfall contravenes Plaintiff's factual allegation that HP did not "investigate whether there was a risk that [it] would default on its matching contribution obligation if forfeitures were used to pay Plan expenses." (2-ER-230 (FAC ¶ 28).) These allegations must be accepted as true and construed in the light most favorable to Plaintiff. *Costar Grp., Inc. v. Com. Real Estate Exch., Inc.*, 141 F.4th 1075, 1083-84 (9th Cir. 2025).

Moreover, as multiple circuits have held, "a plaintiff alleging an ERISA fiduciary breach need not rule out every possible lawful explanation for the conduct he challenges." *Mator v. Wesco Distrib., Inc.*, 102 F.4th 172, 184 (3d Cir. 2024); *Hughes v. Nw. Univ.*, 63 F.4th 615, 629 (7th Cir. 2023); *Sacerdote*, 9 F.4th at 108; *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597 (8th Cir. 2009). To impose such a requirement "would invert the principle that the complaint is construed most favorably to the nonmoving party on a motion to dismiss."

18

*Sacerdote*, 9 F.4th at 108 (citation omitted). It was not Plaintiff's burden at the pleading stage to anticipate every possible lawful explanation for HP's decisions and rule each one out.

## III.   HP DEALT WITH PLAN ASSETS IN ITS OWN INTEREST.

HP argues that Plaintiff's self-dealing claim under § 1106(b)(1) fails because "it is not premised on any transaction between the Plan and HP." (HP Br. 46.) HP is wrong because § 1106(b)(1) does not require a transaction and, even if it did, Plaintiff has alleged one.

HP argues that *Lockheed Corporation v. Spink*, 517 U.S. 882 (1996), requires a transaction but, as HP concedes, in *Spink* "the Supreme Court was specifically construing § 1106(a)(1)(D)." (HP Br. 47.) That statute, unlike § 1106(b)(1), expressly requires a "transaction." HP argues that *Spink* "drew support for its conclusion from Section 1106 as a whole." (HP Br. 47.) However, "the surrounding provisions" examined by the Court were all provisions of § 1106(a), each of which expressly requires a "transaction." *See* 517 U.S. at 892-93 (looking to "[w]hat the 'transactions' identified in § 406(a) … have in common"). Contrary to HP's suggestion, there is no indication that *Spink* drew any support from § 1106(b)(1).

19

HP's attempt to graft the text of § 1106(a), as construed by *Spink*, onto § 1106(b)(1) is foreclosed by *Bugielski v. AT&T Services, Inc.*, 76 F.4th 894 (9th Cir. 2023), *cert. denied*, 145 S. Ct. 1959 (2025), a controlling case that HP wholly ignores. There, this Court declined to adopt precisely the sort of "atextual interpretation" of § 1106 that HP advances here. 76 F.4th at 901.

HP argues that in *Wright* this Court "applied *Lockheed's* transaction requirement not only to a claim under Section 1106(a) but also to a claim under Section 1106(b)." (HP Br. 47.) But *Wright* did not say that *Spink* requires a plaintiff to plead one of the enumerated "transactions" listed in § 1106(a) to state a claim under § 1106(b)(1).[6] *Wright* said that neither statute was violated because the fiduciaries did nothing more than continue to hold the assets of the plan in accordance with the plan's terms. 360 F.3d at 1101.

HP's interpretation of *Wright* is contrary to this Court's decision in *Friend v. Sanwa Bank California*, 35 F.3d 466 (9th Cir. 1994), which

---

[6] If the law were as HP says it is, § 1106(b)(1) would only be violated when § 1106(a) is violated. "Absent clear evidence that Congress intended this surplusage," this Court should "reject[] an interpretation of the statute that would render an entire subparagraph meaningless." *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 128 (2018).

held that a fiduciary "only violates section 1106(b) when it uses the assets of a plan for its own benefit." *Id.* at 470. HP claims that *Friend* "merely noted a necessary condition for a violation of Section 1106(b), not a sufficient one." (HP Br. 50 n.5.) However, *Friend* did not say that a fiduciary's use of plan assets for its own benefit is insufficient to violate § 1106(b)(1). In fact, it said the opposite. *See* 35 F.3d at 470.

HP relies on the context of "Section 1106 as a whole" to argue that § 1106(b)(1) only prohibits transactional self-dealing. (HP Br. 48-49.) This argument, too, is foreclosed by *Bugielski*. Because the "direct terms" of § 1106(b)(1) categorically prohibit all self-dealing with plan assets, HP's "contextual argument cannot create an exception … where one does not exist." 76 F.4th 905. Contrary to the statutory text, HP's interpretation would permit fiduciaries to self-deal with plan assets provided only that their self-dealing is not accomplished through a "transaction" separately prohibited by § 1106(a).

HP relies on the title of § 1106 and the heading of § 1106(b) to argue that a transaction is required to state a claim under § 1106(b)(1). (HP Br. 49.) To be sure, "[t]he title of a statutory provision can inform its interpretation, but it is not conclusive." *City & Cnty. of San*

21

*Francisco v. EPA*, 145 S. Ct. 704, 714 (2025). "[A] statute's title and headings are 'but a short-hand reference to the general subject matter' and cannot 'take the place of the detailed provisions of the text.'" *Nat'l R.R. Passenger Corp. v. Su*, 41 F.4th 1147, 1157 (9th Cir. 2022) (quoting *Lawson v. FMR LLC*, 571 U.S. 429, 446 (2014)).

Here, the title and heading are "not enough to win the day" because they "cannot be read as doing more than" providing "a rough description" of § 1106's "general sweep." *City & Cnty. of San Francisco*, 145 S. Ct. at 714. HP has no explanation for why Congress did not expressly require a transaction in § 1106(b)(1) like it did in other parts of § 1106. *See* 29 U.S.C. §§ 1106(a)(1), (b)(2), and (b)(3). "Atextual judicial supplementation is particularly inappropriate when, as here, Congress has shown that it knows how to adopt the omitted language or provision." *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019).

Finally, HP argues that "[t]he Court should not consider" whether HP transacted with the Plan because Plaintiff "never argued [it] below." (HP Br. 51.) That is factually incorrect. (FER-32-34.) In any event, "it is claims that are deemed waived or forfeited, not arguments." *United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004). Plaintiff's

22

argument that HP transacted with the Plan "is not a new claim; rather, it constitutes an alternative argument to support what has been his consistent claim from the beginning:" that HP "dealt with" forfeitures in its own interest. *Id.* Plaintiff "can make any argument in support of that claim" and is "not limited to the precise arguments [he] made below." *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992). *See also Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995) (same).

HP disputes that the Plan extended it credit – a "transaction" under § 1106(a)(1)(B) – because "[t]he Plan expressly permits the use of forfeitures to 'reduce employer contributions.'" (HP Br. 51.) But HP does not dispute that a "transfer of plan assets" to satisfy an employer's "obligation to contribute to the Fund" constitutes an "extension of credit" under § 1106(a)(1)(B). *Sprague v. Cent. States, Se. & Sw. Areas Pension Fund*, 269 F.3d 811, 817–18 (7th Cir. 2001). Nor does HP dispute that it transferred forfeitures to participant accounts to satisfy its obligation to make matching contributions to those accounts. That the Plan allows HP to choose to use forfeitures to reduce its contributions does not change the fact that HP transferred Plan assets to participant accounts to offset contributions owing to those accounts.

23

## CONCLUSION

The district court's order dismissing Plaintiff's claims for breach of

fiduciary duties and self-dealing should be reversed.

Dated:  August 4, 2025                    **HAYES PAWLENKO LLP**

                                          By: _s/Kye D. Pawlenko_
                                          Matthew B. Hayes
                                          Kye D. Pawlenko
                                          _Attorneys for Appellant_
                                          _Paul Hutchins_

24

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number 25-826**

I am the attorney or self-represented party.

**This brief contains 4,927 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1.

**Signature** *s/Kye D. Pawlenko*              **Date** August 4, 2025